BARCLAY and others *v.* TALMAN *et al.*(a)

---

A court of chancery can interfere to protect and enforce the trusts of an assignment made by a company incorporated in another state while the person or property to be acted upon is within the jurisdiction.

And this might be done at the instance of a creditor provided for in the assignment or by shareholders where they are to have an express benefit under it.

Where an incorporated company makes an assignment for creditors and no event has occurred giving shareholders any express benefit under it and its charter has not become surrendered, revoked or invalid, the shareholders cannot file a bill (which recognizes the assignment) to restrain the assignee in relation to the properties assigned. A voluntary assignment by a corporation or its insolvency or the non-user or misuser of its charter may lay the foundation for a direct application to vacate it; but, until the proper public officer of the state creating the corporation acts and a judgment or decree of a proper tribunal is had, the corporation remains for all the purposes of its creation and with all the legal capacity it ever possessed. *Held*, therefore, that where an incorporated company of Maryland had assets in New York and made an assignment in Maryland, in which one of the trustees under it resided within the jurisdiction of this court, the shareholders could not file a bill, while the charter was outstanding, which

(a) 15th August, 1843, affirmed by the Chancellor on appeal.

1842.

BARCLAY
*v.*
TALMAN.

Dec. 27
and 28,
1842.

*Corpora-
tion.
Incorpora-
ted
Company.
Insolvent
Company.
Rights of
Sharehol-
ders in
Equity.
Charter.
Foreign
Corpora-
tion.
Injunction.
Jurisdic-
tion.
Assign-
ment by
insolvent.*

recognized the trust and yet asked the court to restrain the trustees on the grounds that there was mere virtual dissolution and that the assets had become an equitable trust fund. The shareholders should first proceed in Maryland to dissolve the corporation.

THIS case came before the court on an order to show cause why an injunction should not issue and a receiver be appointed. Besides the circumstances detailed in the bill, there were a few additional facts presented by the affidavits of the defendants.

The complainants were a portion of the stockholders of the American Life Insurance and Trust Company; and they exhibited their bill on behalf of themselves and of all the other stockholders—and it was expressed to be " also on behalf of all those who were creditors of the company," a corporation created by an act of the legislature of the state of Maryland passed in December, 1837, constituting its charter, which was declared to be a perpetual one, with a capital of two millions of dollars. The company commenced business at Baltimore in the state of Maryland ; but in the year one thousand eight hundred and thirty-eight they transferred the principal part of their business to the city of New York, where it had been since conducted on a large scale—embracing transactions to the amount of some eight millions of dollars.

On the sixth day of July, one thousand eight hundred and forty-two, the company, finding itself embarrassed, made a voluntary assignment of all its property and effects to the defendants Patrick Maccullay and George·F. Talman, upon trust for the benefit of creditors ; and, in a certain event, for the advantage of the stockholders. The deed of assignment was executed at Baltimore, in pursuance of a resolution of the board of managers or trustees regularly convened there. The assignees were selected without consulting the stockholders or creditors. The largest portion of the assigned property being in the city of New York, it was delivered to or taken possession of by the defendant George F. Tallman, the only acting assignee in New York. Anthony Barclay, Esquire, had been named a trustee, but he declined the trust. The other assignee, Patrick Maccullay, resided in Baltimore.

The object of the present suit was, to have the court of

chancery protect the property, by placing it in other and
safer hands; and decree a final distribution of it amongst
the lawful creditors and stockholders. The *gravamen* of
the bill may be stated as follows: 1. A course of business
pursued by the company, including many very heavy trans-
actions, which were not only unauthorized by their char-
ter, but were contrary thereto and contrary also to the re-
straining law of the state of New York and in respect to
which the officers and managers of the company had com-
mitted breach of duty towards the stockholders and brought
its affairs into embarrassment and subjected the stockholders
to great loss. 2. Contracting usurious debts and creating
liabilities not authorized by their charter and which could
never be legally enforced; making various partial assign-
ments or hypothecations of property and, finally, a general
assignment of the estate of the company, to be held in trust
for the security and payment of such illegal as well as fair
and honest demands and giving preferences. 3. Selecting,
as assignees under the assignment, the president of the com-
pany for one, who was largely indebted to such company and
who had been an officer thereof, during the whole period of
the illegal transactions complained of and for appointing, as
another assignee, one of the trustees or managers of the com-
pany, who, it appeared, had previously assigned and who
had not been a trustee or manager within a year previous
to the making of the assignment. The bill, moreover, in-
sisted that the company, on parting with all its property by
means of the assignment, ceased to have any legal exist-
ence; that the property had thereby become a trust-fund
liable to be applied in equity to the satisfaction of legal de-
mands of creditors and the surplus to the stockholders; that
the charter had become extinct and the same consequences
must follow as though it had been limited and had expired
by its own limitation; that, if the facts did not in law
amount to a technical dissolution of the corporation, yet they
showed such an entire surrender and abandonment by the
officers and trustees of the company of all its property and
effects that, in equity, the complainants had a right to ask
the aid and interposition of this court in securing the pro-

1842.

BARCLAY
*v.*
TALMAN.

perty and applying it to the benefit of all persons interested therein.

Mr. *D. Selden* and Mr. *Wood*, for the complainants.

Mr. *B. F. Butler* and Mr. *George Griffin*, for the defendants.

*March* 21, 1843.

THE VICE-CHANCELLOR:—It is to be observed that the bill nowhere asks to have the assignment set aside, and the counsel for the complainant, on the argument, disclaimed all intention of impeaching its validity or of disturbing the trusts therein declared—on the contrary, they profess a willingness to have those trusts executed, with such modifications as a court of equity would naturally adopt in order to carry out the intendments of law and do complete justice to all parties—stockholders, as well as creditors.

There can be no doubt of the power of a court of chancery here or elsewhere to interfere for the purpose of protecting and enforcing the due performance of all or any one of the specified trusts of the assignment in question, so long as the person and property to be acted upon or either of them are situated within the territorial limits of such court or the bounds of its jurisdiction.

Thus, for example, if creditors, whose debts are provided for by the assignment or any of them, should file a bill in this court, complaining of some misconduct of the assignees or of the insecurity of the property in their hands or of waste or misappropriation of any of the funds; and asking to have the property protected and the trust executed, this court would certainly have jurisdiction to entertain such a bill in relation to the trust property or against the person here within the reach of its process.

So, again, if there is in this assignment a present subsisting trust expressly declared for the benefit of the stockholders of the company, they may, under similar circumstances, file a bill; and the jurisdiction of this court, in relation to the subject-matter here, could not be questioned.

But the great point to be considered is, whether, independent of the express trusts in the assignment, the court of

chancery of this state can take cognizance of the case in behalf of stockholders?

Let us see what the trusts are which immediately concern the stockholders. They are to be found, if any where, in the eleventh and twelfth clauses of the assignment. By the eleventh clause, it is provided that, whenever the debts of the company shall have been paid out of the assigned property or, before that is done, whenever it shall be required by a majority in amount of the unpaid creditors and by the stockholders at a stated meeting to be called for that purpose (the chancellor of Maryland assenting to the requirement,) then, in either of the above two events, the assignees shall reconvey and deliver to the company all the property which may remain : and the company shall thenceforth possess and enjoy the property so reconveyed as fully as if the assignment had never been executed. Now, here is not a trust for stockholders, except as they compose the body corporate. In either of the events provided for, there is not to be a distribution among them, but a restoration of the property to the company in its corporate capacity. The trust supposes the corporation still to exist and its capacity unimpaired to take and hold the property upon a reconveyance ; and, if any proceedings at law or in equity against the assignees should be necessary in order to compel an account and a due performance of this trust, such proceedings must be taken by and in the name of the corporation and not by individual stockholders. The twelfth clause, however, does create a trust for the benefit of stockholders individually, namely, in the event that the charter should be vacated, for then the surplus or remaining property, after payment of the debts, is to be distributed by the assignees among the stockholders. This is an event looked forward to as one which might happen and not as one having already occurred. It is prospective and contingent. The language is : "And should it so happen that, before or after payment of all the debts, the charter of the company shall be vacated, then and in that event the said assignees shall make distribution among the stockholders, &c." This seems to suppose that proceedings might be taken to annul the charter and dissolve the corporation by judicial sentence or

possibly to repeal it by legislative enactment and in either case it was proper to provide for the entire settlement and winding up of the concerns of the company with the stock-ders, as well as with the creditors and have a trust for a final distribution. But before the stockholders can avail themselves of this trust according to its plain and obvious meaning, they must show that the event has occurred upon which it is made to depend and from which it is to take effect. This is not shown. The fact of any such judicial sentence or decree or repeal by or surrender to the granting power nowhere appears. That there has been a virtual abandonment and surrender of the corporate powers of the company and that it has ceased to exist or become extinct is alleged as matter of law from the facts stated ; and if correct, as a legal consequence, it is not that act revoking or vacating the charter which the twelfth clause has reference to and which is to give effect to the trust for distribution.

It seems to me quite clear that, upon the trusts of the assignment, the stockholders, at present, can have no standing in court.

Then, aside from these trusts, is there enough in this case to give this court jurisdiction at the instance of stockholders.

They claim the right to have the property of this foreign corporation, which is situated within the city and state of New York, placed under the protection of this court ; and applied and distributed in the same manner as upon a distribution and a winding up and final settlement of the concerns of the corporation. This, in effect, is the scope and object of the bill. It proceeds, as already shown, upon the ground of a virtual dissolution of the corporation ; and that its property has become, in equity, a trust fund liable to be dealt with in this way.

But, is the corporation dissolved, so as to expose itself and its property to this consequence ?

The counsel for the complainants place great reliance on the cases of *Slee* v. *Bloom*, 19 J. R. 473, and *Penniman* v. *Briggs*, Hopk. R. 300, and S. C. on appeal, 8 Cowen's R. 387 as establishing the point.

These cases do, indeed, decide that manufacturing corpo-

rations formed under a general statute of this state and
which were but a species of partnership—were to be deem-
ed dissolved within the meaning of the statute, whenever
they ceased to do business and were divested of all their
property either by their own act or by executions at law
against them.   But these decisions were made with refer-
ence to the rights of creditors in commencing suits against
stockholders for the debts of the corporation, the statute hav-
ing imposed upon the stockholders, to the extent of their
shares, a personal liability for whatever debts were owing
by such corporations at the time of their dissolution.   Hav-
ing ceased to act as a company and being without the means
of ever resuscitating or resuming business, they were held
to be dissolved within the intent of the statute so far as to
give the remedy to creditors against the individual stock-
holders and that a judgment of ouster or dissolution was not
necessary previously to the commencement of a suit by cre-
ditors under the statute.

These cases, however, are not authority for the position
assumed by the bill that a voluntary assignment by a cor-
poration of all its property, for specific purposes, is *ipso facto*
a dissolution as between the stockholders or corporators.

Such an act may lay the foundation for a proceeding to
vacate the charter and dissolve the corporation.   Insolvency
may be a sufficient cause for a similar proceeding at the in-
stance of stockholders or creditors.   So, non-user and misu-
ser of the corporate powers may be cause of forfeiture when
the government, by its proper officer, will proceed to recall
the charter or grant of its franchises.   This can only be ac-
complished in any of the supposed cases by a direct pro-
ceeding taken against the corporation itself in its corporate
name; and until judgment or decree of a competent tribunal
ousting it of its corporate rights and pronouncing it dissolv-
ed, the corporation remains for all the legitimate purposes
of its creation.

This is not only a part of the common law as handed
down to us from former times, but it is now incorporated into
the revised statutes of this state which confer jurisdiction
upon the court of chancery and prescribe the proceedings
which may be had against corporations in certain cases : 2

1843.

BARCLAY
*v.*
TALMAN.

R. S. 462, 467, and which declare the remedy also by information in the nature of a *quo warranto* before the Supreme Court : Ib. 581, § 39. And it is the law which has been followed in other states ; and nowhere is it more fully recognized and applied than by the highest judicial tribunal of Maryland : See the cases in 4 Gill & Johns. R. 1 ; 6 Ib. 205 ; 9 Ib. 365 ; 10 Ib. 346.

In the case of *The Bank of Maryland* (6 Gill & Johns. 205) it is one of the points decided that a banking corporation, although it may, by a transfer of all its property, render itself powerless to discharge the purposes of its institution, yet it still is a living and existing corporation, and this is practically exemplified in a subsequent case in which the same bank was plaintiff : 7 Gill & Johns. 448, and see also *The Farmer's Bank of Delaware* v. *Beaston*, Ib. 421. In the face of these authorities, I cannot undertake to say that the American Life Insurance and Trust Company is a lifeless institution. It still retains its character with all the legal capacity it ever possessed ; and this, with all its attributes, must be resolved into their original elements before the stockholders can step into this or any other court of judicature and ask to have the fragments gathered up and distributed among them. A proceeding for that, purpose must be had in Maryland where this company originated. Her tribunals of law or equity are doubtless competent to afford the proper relief either by virtue of the common law powers or by virtue of their statutory jurisdiction if any has been conferred in such cases. Although a denizen of this state, this corporation is foreign and alien to our laws and over which, for the purpose of dissolving it and winding up its affairs, the courts of this state can have no jurisdiction.

The views which I have thus taken of the case and the conclusions I have formed render it unnecessary to consider what effect certain proceeding which some of the complainants in this bill and other stockholders of the company appear (from papers recently submitted to me) to have taken before the chancellor of Maryland, would have upon the proceedings in this suit.

As the present bill entirely fails in my judgment, for the want of jurisdiction, the complainants are left to pursue such

remedy in Maryland as they should be advised is the proper one to dissolve this corporation ; and when that is done, and as ancillary to a receivership appointed there, if such should be the case, this court may lend its aid in relation to any property within this jurisdiction.

The order made upon the bill in this cause must be discharged, with costs to be taxed.(*a*)

(*a*) The chancellor, in affirming this opinion, decided that where the officers and trustees of a corporation have assigned its property which is in this state to persons residing here and the rights of the stockholders are thereby endangered, this court has power to grant relief, although the corporation itself is located in another state. But that while the corporation is in existence, the relief which this court or any other court of chancery is authorized to grant would not extend to a distribution of the funds of the institution among its stockholders. Before that can be done, the proper tribunal having jurisdiction of the question must have dissolved the corporation or declared its privileges and franchises forfeited. That to such an application as was made in this case the corporation was a necessary party; and that the assignment of its funds to trustees would not dissolve the corporation so as to render it unnecessary to make it a party to the suit.