## HAWKINS v. GLENN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NORTH CAROLINA.

No. 266. Argued April 22, 23, 1889.—Decided May 13, 1889.

In the absence of fraud, stockholders are bound by a decree against their corporation in respect to corporate matters, and such a decree is not open to collateral attack.

Statutes of limitation do not commence to run as against subscriptions to stock, payable as called for, until a call or its equivalent has been had, and subscribers cannot object when an assessment to pay debts has been made, that the corporate duty in this regard had not been earlier discharged.

Rules applicable to a going corporation, remain applicable notwithstanding it may have become insolvent and ceased to carry on its operations, where, as in this case, it continues in the possession and exercise of all corporate powers essential to the collection of debts, the enforcement of liabilities and the application of assets to the payment of creditors.

Stockholders of record are liable for unpaid instalments, although they may have in fact parted with their stock, or may have held it for others.

The objection that too large an amount of interest has been included in a judgment cannot be raised for the first time in this court.

THE court stated the case in its opinion as follows:

John Glenn, trustee of the National Express and Transportation Company, brought an action at law, November 5, 1883, against William J. Hawkins, in the Circuit Court of the United States for the Eastern District of North Carolina, alleging

that Hawkins, on or about November 1, 1865, subscribed for two hundred and fifty shares of the capital stock of that company, a body corporate of the State of Virginia, and thereby undertook and promised to pay for each and every share so subscribed for by said defendant the sum of one hundred dollars, in such instalments and at such times as he might be lawfully called upon and required to pay the same, according to the law under which the company was incorporated; that on the 20th day of September, 1866, the express company, by its deed of that date, assigned and transferred to Hoge, O'Donnell, and Kelly, for the benefit of its creditors, all its property, rights, credits and effects of every kind, in trust for the payment of the debts of said company; that afterwards, in a certain cause instituted in the Chancery Court of the city of Richmond, in the State of Virginia, in which the official administrator of W. W. Glenn, deceased, and other persons, claiming to be creditors of the express company, were complainants, and said company, Kelly and Hoge, surviving trustees, and other persons, officers of said company, were defendants, it was, on the 14th day of December, 1880, decreed that plaintiff be, and he thereby was, appointed trustee to execute the trusts of the deed of trust in the room and stead of the trustees originally created by said deed; and it was further decreed that a large amount of the debts of the express company remained unpaid, and that, of the sum of one hundred dollars for each and every share of the stock of the company undertaken and promised to be paid for by the subscribers for said stock and their assigns, the sum of eighty dollars per share had never been called for or required to be paid by the president and directors of said company, and remained liable to be called for and required to be paid by the subscribers for said stock and their assigns; and it was further decreed that it was necessary and proper for a call of thirty per cent to be made, which call and assessment was accordingly ordered; and that by force of his subscription and said call, the defendant was liable to pay the sum of $7500 on his shares of stock, with interest.

Hawkins filed his answer January 28, 1884, in which he said that he subscribed for two hundred of the two hundred and

fifty shares for other persons than himself, and that he was not liable thereon.. He denied that he owed anything on account of any of said shares, and averred that the· plaintiff was·not the proper plaintiff, and " that the plaintiff's cause of action did not accrue within three years before the commencement of this action."

Upon the trial of the cause the plaintiff adduced evidence tending to show that in March, 1861, a corporation had been chartered by the legislature of the State of Virginia, to be known as the Southern Express Company, but that no organization was had thereunder; that in 1865 it was proposed to adopt the said charter as the basis of action for the formation of a new and larger enterprise of the same kind; that, accordingly, in November of that year, subscriptions having been made to the capital stock in many States, a provisional organization was effected in which the defendant Hawkins was named as one of the directors, and the business of the company was commenced and actively prosecuted; that on the 12th day of December, 1865, a new and amended charter was granted by the legislature of Virginia for a company to be known as the " National Express and Transportation Company," the defendant being named therein as one of the corporators; that the capital stock was authorized to be five million dollars, divided into shares of one hundred dollars each, of which a part was payable at the time of subscribing and the balance as called for by the president and directors; that in January, 1866, the provisions of the charter having been complied with, the corporation was duly organized, the defendant being one of the directors; that in September, 1866, having contracted many debts, and finding itself much embarrassed, it executed a deed of assignment, conveying and assigning in trust to trustees, for the benefit of all its creditors, all of its property, including the unpaid subscriptions to the capital stock, of which only twenty per cent had been called for by the president and directors; and that the trustees took possession of the assets November 1, 1866, and the business of the company ceased. Plaintiff further put in evidence the transcript of the record of the proceedings in the Chancery Court of the city of Rich-

mond, referred to in plaintiff's declaration, in which, upon a
general creditor's bill brought in 1871, against the said com-
pany, and its president and directors, and the surviving trustees
in said deed of assignment, the court had, by a decree entered
on the 14th day of December, 1880, adjudicated the indebt-
edness of the said company to require an assessment of thirty
per cent of the unpaid subscriptions for the payment of the
same, and the necessity and propriety of an assessment of thirty
per cent upon the unpaid subscriptions for the payment of the
said indebtedness, and the substitution of the plaintiff as trus-
tee to receive and collect the said assessment; and then the
plaintiff introduced in evidence the stock books of said com-
pany showing the following entries as to the defendant
Hawkins:

| To whom transferred. | | Transfer No. | Certificate No. | No. of shares. | Requisition drawn. | | From whom transferred. | Certificate No. | No. of shares. | Requisition paid. |
|---|---|---|---|---|---|---|---|---|---|---|
| 1886. Feb. 5 | M. Bowes . . . . | 436 | 302 | 10 | 50 | 1865. Nov. 1 | Company | 299 to 303 | 250 | $1250 |
| " " | Geo. B. Waterhouse | 437 | 302 | 10 | 50 | | | | | |
| " " | B. P. Williamson . | 438 | 302 | 10 | 50 | | | | | |
| " " | R. H. Battle, Jr . . | 439 | 302 | 10 | 50 | | | | | |
| " " | Wm. E. Anderson . | 440 | 302 | 10 | 50 | | | | | |

The defendant testified that he subscribed for two hundred
and fifty shares under the following circumstances: That at
the instance of three other citizens of North Carolina, viz.,
K. P. Battle, J. M. Hoge and B. P. Williamson, he went to
Richmond in the fall of 1865, and proposed to the parties
superintending the reception of subscriptions, to take fifty
shares each for the above named persons, and one hundred
shares for himself, having in contemplation other parties who
might wish to take fifty shares of this one hundred; that the
superintendent suggested that it would be more convenient to
place his name only upon the books as subscriber for the whole
two hundred and fifty shares, and this was done, the initials
of the three persons being at the same time indorsed as a

memorandum on the subscription paper; that in January, 1866, when the company was organized, he, being one of the directors, informed the board of directors of the terms of his subscription as above, and no objection was made thereto; that he instructed the officer of the company whose business it was to issue certificates of stock to issue five for fifty shares each, three of them in the names of the above parties and two to himself, and at the same time paid two hundred and fifty dollars which had been assessed upon the two hundred and fifty shares, one hundred and fifty dollars of which he had received from his principals, but that he had receipted for such certificates upon the books of the company; that shortly afterwards the five certificates were transmitted to him in North Carolina, all five being made out in his name only; that he did not return either of them to the company, but immediately transferred each of the three in question to the party for whom it was intended; and that only one of the certificates was ever transferred upon the books of the company.

The court instructed the jury to find for the plaintiff, and the defendant excepted. The jury returned a verdict in favor of plaintiff for $9508.75, "of which $7500 is principal, and bears interest from June 1, 1885," upon which judgment was rendered and a writ of error prosecuted to this court.

The record of the Chancery Court of the city of Richmond shows that W. W. Glenn recovered judgment in the Superior Court of Baltimore City, against the express company, by default, June 8, 1869, which was entered up for $42,501.31, on assessment of damages, June 24, 1870, and that, on the 4th day of December, 1871, Glenn filed his bill on his own behalf and that of such other creditors of the express company as might become parties to the suit, against the express company, its president and directors, and the trustees named in the deed of trust, subpœnas having issued on the 28th of November, 1871, which were served on two directors of the company.

The bill sets forth the recovery of the judgment; that the trustees had collected little or nothing; that the visible property of the company had been seized by creditors in various States; that only twenty per cent had been called for from

the stockholders, of which the trustees had collected but little; that the validity and legal effect of the deed had been drawn in question in the courts of various States, and the operations of the trustees hindered; that it would be necessary to resort to the remainder of the subscription to pay the company's debts, and stockholders could not be sued until a call had been made by the company; that doubts had been expressed whether the subscriptions passed by the deed; that, if they did, the trustees could not sue without a call; and that equity demanded that money should be collected by a call and assessment upon all the stockholders. The bill prayed for a construction of the deed, the appointment of a receiver, an account, and the ascertainment of the amount necessary to be assessed for the purpose of paying the debts, etc., and for general relief.

Nothing further was done until August 4, 1879, when an amended and supplemental bill was filed asking that the trustees be removed and a new trustee be appointed, and that if the company should make no assessment upon the stockholders the court might make one. This amended bill charged that nothing had been done by the company or the trustees in execution of the trust, or to pay creditors; that the books of the company had been retained by one of the two surviving trustees, who were non-residents, the third trustee being dead, etc. It does not appear that process was issued against the company upon the original bill, but upon the amended and supplemental bill a subpoena was issued against it, its officers, directors, and trustees, and this was served upon two directors and a cashier of the company, and published for four weeks in a newspaper in the city of Richmond.

The surviving trustees, Hoge and Kelly, filed answers setting forth in detail a variety of causes which had operated to delay and impede their proceedings, and furnished excuses for their apparent *laches*, particularly litigation in Maryland and New York, in which injunctions were granted, and, in one of the suits, a receiver was appointed, to whom the books and papers of the company were consigned, and when returned, on the disposition of that case, after the lapse of some years, they were carried to New York.

A decree *pro confesso* was taken against the company in September, 1879, and an interlocutory order entered on the 6th of October following, referring the case to one of the commissioners of the court to take an account of the debts due by the company and the priorities thereof, and an account of its assets, etc., upon giving due notice by publication, which he did. The commissioner made report ascertaining the total of indebtedness, and the whole amount of unpaid stock; and he recommended an assessment of twenty per cent. By a supplemental report an increase of the assessment was recommended, and a decree was finally rendered, December 14, 1880, sustaining the deed of trust, substituting John Glenn as trustee, holding that the power to make assessment remained with the company after the deed was executed, finding the amount of the indebtedness and that there was no property to pay the debts except the eighty per cent unpaid of the capital stock, and ordering an assessment of thirty per cent, payable to Glenn, trustee, who was thereby authorized to collect and receive the same.

*Mr. Samuel F. Phillips* (with whom were *Mr. W. H. Lamar* and *Mr. J. G. Zachry* on the brief) for plaintiff in error.

I. Interest upon the call accrued only from actual demand upon the defendant. The decree for a call was made nearly thirteen years after the company stopped business. The defendant was not a party to the suit. Under these circumstances he is not chargeable with neglect for non-compliance with the order, until actually notified of it. The language of this court in *Sanger* v. *Upton*, 91 U. S. 56, is to be taken in connection with the contention made in that case that a stockholder is not bound at all by a call made in a cause to which he is not a party. We do not deny that he is bound by it. We only maintain that he is not chargeable with *laches* for not obeying it until he is notified of its requirements. *Hunt* v. *Nevers*, 15 Pick. 500, 505; *S. C.* 26 Am. Dec. 616. A call by the court is not a decree for the money included in the call. *Glenn* v. *Saxton*, 68 California, 353.

II. The defendant is not responsible for the subscription to

the 150 shares taken by him for solvent and named principals and for which it was, at the time of the subscription, agreed between the parties that he should not be liable.   As between him and the company he could not have been held liable. *Scovill* v. *Thayer*, 105 U. S. 143, 153.   This action is brought by a substitute for the trustees who were created by the voluntary act of the company. . That substitute is bound to all to which the company itself would have been bound, if it had been plaintiff.   *Wisner* v. *Brown*, 122 U. S. 214.

The rule that if an agent bind himself upon the face of a written contract he cannot discharge himself therefrom by showing that he did so merely as agent, does not apply to cases like this, in which courts of law are authorized by statute to admit equitable pleas.   *Wake* v. *Harrop*, 6 H. & N. 768 ; *S. C.* 1 H. & C. 202.

· III.   The cause of action did not accrue within three years. To consider the circumstances of the present case more closely :

(1) It is essentially unlike the case of a call made by the authorities of a corporation still doing business.   For in that case the subscriber has contracted that such authorities may call as and when in their judgment the affairs of the company may require it ; and the state of things contemplated at the time of subscription is still going on.   Therefore in that case it may very well be that, although no call has been made upon unpaid subscriptions within ten years or more, the statute of limitations has no application.   *Modus et conventio vincunt legem.*   The case may be the same where a promise has been made to pay money so many days after demand and there is no context showing that such demand was to be made within a limited time ; for there, if the holder makes no demand [*i.e.,* call] for ten years or more, he is authorized by the contract so to delay, and the statute is inapplicable for the reason just stated.

(2). The period of time in the present· case whose lapse is supposed to have given effect to the statute of limitations was a period during the whole of which the provision in the subscription as affected by the Virginia statute, which submits the subscriber to the discretion of " the president and

directors" as to the time at which calls might be made, had become null, and the latter had, in respect of calls, become subject to the general principles of courts of justice. It is not because a debtor has contracted to be subject to the judgment of a court, whether for a call or otherwise, that such judgment is given. Judicial action, in that case only, supervenes upon the state of things which the contract had created, in the same way that it does upon like states created by torts. *In re Welsh Flannel and Tweed* Co., L. R. 20 Eq. 360; *In re Glen Iron Works*, 20 Fed. Rep. 674.

If the suit for a call is to be considered as a mere incident to the suit to recover the amount called, it follows that inasmuch as after the stoppage of business the time of making a call was no longer matter of discretion, but was subject to the notice and direction of the law, the lapse of time before making application for such call (the bringing suit therefor) is to be counted in reckoning, under the statute of limitations, whether the suit subsequently brought under such call has been brought in good time. *Diefenthaler* v. *New York City*, 111 N. Y. 331; *Borst* v. *Corey*, 15 N. Y. 505; *Glenn* v. *Dorsheimer*, 23 Fed. Rep. 695; *Atchison & Topeka Railroad* v. *Burlingame*, 36 Kansas, 628; *Chalfin* v. *Moore*, 9 B. Mon. 496; *S. C.* 50 Am. Dec. 525; *Pittsburg & Connellsville Railroad* v. *Byers*, 32 Penn. St. 22; *S. C.* 72 Am. Dec. 770; *Morrison* v. *Mullin*, 34 Penn. St. 12; *Keithler* v. *Foster*, 22 Ohio St. 27; *Palmer* v. *Palmer*, 36 Mich. 487.

*Mr. Wilbur F. Boyle*, by special permission of court, also addressed the court for plaintiff in error. *Mr. John W. Dryden* was with him on his brief.

*Mr. Charles Marshall* and *Mr. John Howard* for defendant in error. Their brief contained the following list of reported cases in which one or more of the questions involved in the present case had been tried and adjudicated.

In the Court of Appeals of Virginia. *Vanderwechen* v. *Glenn*, 6 S. E. Rep. 806; *Lewis's Adm'r.* v. *Glenn*, 6 S. E. Rep. 866; *Hambleton* v. *Glenn*, 13 Virginia Law Journal, 242.

In the Supreme Court of Alabama. *Glenn* v. *Semple*, 80 Alabama, 159; *Lehman, &c.* v. *Glenn*, 13 Virginia Law Journal, 302; *Semple* v. *Glenn*, 13 Virginia Law Journal, 305; *Sayre* v. *Glenn*, 13 Virginia Law Journal, 307; *Morris* v. *Glenn*, 13 Virginia Law Journal, 224.

In the Court of Appeals of Maryland. *Glenn* v. *Williams*, 60 Maryland, 93; *Glenn* v. *Clabaugh*, 65 Maryland, 65; *Glenn* v. *Howard*, 65 Maryland, 40; *Glenn* v. *Savage*, 65 Maryland, 40; *McKim* v. *Glenn*, 66 Maryland, 479.

In North Carolina. *Glenn* v. *Orr*, 96 North Carolina, 413.

In Georgia. *Glenn* v. *Howard*, 8 S. E. Rep. 636.

In California. *Glenn* v. *Saxton*, 68 California, 353.

In the Federal Courts. *Glenn* v. *Camden*, *Glenn* v. *Bennett*, *Glenn* v. *Bland*, in the Circuit Court of the United States for the District of West Virginia, reported in Parkersburg State Journal of June 25th and 26th of 1886. *Glenn* v. *Jackson* and *Glenn* v. *Calaway*, before the late Judge Baxter, reported in the Louisville Courier-Journal, October 31, 1885. *Glenn* v. *Dorsheimer*, 23 Fed. Rep. 695; *S. C.* 24 Fed. Rep. 536; *Glenn* v. *Springs*, 26 Fed. Rep. 494; *Glenn* v. *Scott*, 28 Fed. Rep. 804; *Glenn* v. *Coyle*, 22 Fed. Rep. 417; *Glenn* v. *Soule*, 22 Fed. Rep. 417; *Foote* v. *Glenn*, 36 Fed. Rep. 824.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Counsel for plaintiff in error contends that the decree of the Richmond Chancery Court making the call and assessment was void as against him, because he was not a party to the suit; that the cause of action was barred by the statute of limitations; that he was not responsible upon one hundred and fifty shares of the stock; and that interest should not have been allowed from the date of the call, but only from the time of the filing of the complaint.

The jurisdiction of the Richmond Chancery Court to settle the construction of the deed of trust, to remove the original trustees and substitute another, and to ascertain the extent of the liabilities and assets of the corporation, is not denied. It

is conceded that the balance remaining unpaid on subscriptions to stock is a trust fund for the payment of corporate debts and that a judgment obtained against a corporation cannot be impeached except for fraud.

But it is said that a binding assessment cannot be levied without the presence of the stockholders or service of process or notice upon them.

Under the charter of this company a call could only be made by the president and directors and was a corporate question merely, and in the situation of the company's affairs it was a duty to make it, failing the discharge of which by the president and directors, creditors could set the powers of a court of equity in motion to accomplish it.

Executing in that regard a corporate function for a corporate purpose, it is difficult to see upon what ground it could be held that the court could not order an assessment operating upon stockholders, who would be bound if the president and directors had ordered it.

Sued after such an order of court, the defendant does not deny the existence of any one of the facts upon which the order was made, but contends that there has been no call as to him, because he was not a party to the cause between creditor and corporation. We understand the rule to be otherwise, and that the stockholder is bound by a decree of a court of equity against the corporation in enforcement of a corporate duty, although not a party as an individual, but only through representation by the company.

A stockholder is so far an integral part of the corporation that, in the view of the law, he is privy to the proceedings touching the body of which he is a member. *Sanger* v. *Upton,* 91 U. S. 56, 58, in which case it is also said: " It was not necessary that the stockholders should be before the court when it [the order] was made, any more than that they should have been there when the decree of bankruptcy was pronounced. That decree gave the jurisdiction and authority to make the order. The plaintiff in error could not, in this action, question the validity of the decree; and for the same reasons she could not draw into question the validity of the

order. She could not be heard to question either, except by a separate and direct proceeding had for that purpose." As against creditors there is no difference between unpaid stock "and any other assets which may form a part of the property and effects of the corporation," (*Morgan County* v. *Allen*, 103 U. S. 498, 509,) and "the stockholder has no right to withhold the funds of the company upon the ground that he was not individually a party to the proceedings in which the recovery was obtained." *Glenn* v. *Williams*, 60 Maryland, 93, 116. In the last cited case, which was an action to recover upon the assessment controverted here, the Court of Appeals of Maryland passed upon the question now before us, and held in an able opinion by Alvey, J., that the Richmond Chancery Court acquired jurisdiction over the express company and the trustee; that that court had power and jurisdiction to make assessments upon the unpaid subscriptions to raise funds to pay the corporation's debts, and its decree making such assessment was binding and effective "upon the stockholders who were not in their individual capacities parties to the cause;" that Glenn was legally appointed trustee; and that the statute of limitations began to run only from the time the assessment was made by the decree of the court in Virginia and could form no bar to the right to recover in the action. *Sanger* v. *Upton, supra*, is quoted from, and it is correctly stated that that decision "was made not in pursuance of any express provision of the bankrupt law, but in analogy to the powers and procedure of a court of equity and to meet the requirements and justice of the case."

In *Hambleton* v. *Glenn*, 13 Virginia Law Journal, 242, [decided in the Court of Appeals of Virginia March 14, 1889, and not yet reported in the official series,] the rejection by the Circuit Court of Henrico County, Virginia, to which the suit in the Richmond Chancery Court had been removed, of a petition of certain stockholders to be made parties, and for a rehearing of the cause, came under review in the Supreme Court of Appeals of Virginia, and that court among other things said : "The first question raised in this court is that the appellants are entitled to be made parties to the suit of *Glenn* v.

*National Express and Transportation Company,* because the relief sought is against them. The suit of *Glenn* v. *The National Express and Transportation Company* is a creditor's suit against a corporation, and, by the terms of its charter and the laws of this State applicable to said company, it was lawfully sued as such by its corporate name, and the individual stockholders were not proper parties to such a suit, the president and directors being by their selection their representatives for this purpose. The appellants admit this as to any live and going corporation, and claim, as the corporation is dead, that by its deed of trust it assigned to trustees and ceased to exist; that in a suit by a creditor, or by creditors generally, the suit against the corporation is in fact one not against the corporation, but against them as stockholders, and they are not represented by the company nor by the trustees. By the law of this State, (Code of 1873, c. 56, § 31,) 'when any corporation shall expire or be dissolved, or its corporate rights and privileges shall have ceased, all its works and property, and debts due to it, shall be subject to the payment of debts due by it, and then to distribution among the members according to their respective interests; *and such corporation may sue and be sued as before,* for the purpose of collecting debts due to it, prosecuting rights under previous contracts with it, *and enforcing its liabilities,* and distributing the proceeds of its works, property and debts, among those entitled thereto.' By which it is provided that, notwithstanding its death, it stands, for the purpose of being sued by creditors, just as it did while live and going, and may sue and be sued as before, and that the directory has assigned to trustees alters the case only so far as to make the trustees necessary parties."

The section quoted from the Code of 1873 is identical with section 30 of chapter 56 of the Code of 1860; and as the corporation, notwithstanding it may have ceased the prosecution of the objects for which it was organized, could still proceed in the collection of debts, the enforcement of liabilities, and the application of its assets to the payment of its creditors, all corporate powers essential to these ends remained unimpaired. We concur in the decision to this effect of the highest

tribunal of the State where the corporation dwelt, in reference to whose laws the stockholders contracted, (*Canada Southern Railway* v. *Gebhard*, 109 U. S. 527,) and in whose courts the creditors were obliged to seek the remedy accorded. *Barclay* v. *Tallman*, 4 Edw. Ch. 123; *Bank of Virginia* v. *Adams*, 1 Parsons Sel. Cas. 534; *Patterson* v. *Lynde*, 112 Illinois, 196.

We think it cannot be doubted that a decree against a corporation in respect to corporate matters, such as the making of an assessment in the discharge of a duty resting on the corporation, necessarily binds its members in the absence of fraud, and that this is involved in the contract created in becoming a stockholder.

The decree of the Richmond Chancery Court determined the validity of the assessment; and that the lapse of time between the failure of the company and the date of the decree did not preclude relief, by creating a bar through statutes of limitation or the application of the doctrine of *laches*. And so it has been held in numerous cases referred to on the argument. The court may have erred in its conclusions, but its decree cannot be attacked collaterally, and, indeed, upon a direct attack, it has already been sustained by the Virginia Court of Appeals. *Hambleton* v. *Glenn*, *supra*.

Some further observations may not inappropriately be added. Unpaid subscriptions are assets, but have frequently been treated by courts of equity as if impressed with a trust *sub modo*, upon the view that, the corporation being insolvent, the existence of creditors subjects these liabilities to the rules applicable to funds to be accounted for as held in trust, and that therefore statutes of limitation do not commence to run in respect to them, until the retention of the money has become adverse by a refusal to pay upon due requisition.

But the conclusion as to the statute need not be rested on that ground; for, although the occurrence of the necessity of resorting to unpaid stock may be said to fix the liability of the subscriber to respond, he cannot be allowed to insist that the amount required to discharge him became instantly payable though unascertained, and though there was no request, or its equivalent, for payment.

And here there was a deed of trust made by the debtor corporation for the benefit of its creditors, and it has been often ruled in Virginia, that the lien of such a trust deed is not barred by any period short of that sufficient to raise a presumption of payment. *Smith* v. *Virginia Midland Railroad*, 33 Grattan, 617; *Bowie* v. *The Poor School*, 75 Virginia, 300; *Hambleton* v. *Glenn*, 13 Virginia Law Journal, 242. This deed was not only upheld and enforced by the decree of December 14, 1880, but also the power of the substituted trustee to collect the assessment by suit in his own name, was declared by the Court of Appeals of Virginia, in *Lewis's Administrator* v. *Glenn*, 6 S. E. Rep. 866. See also *Baltimore & Ohio Railroad* v. *Glenn*, 28 Maryland, 287.

By the deed the subscriptions, so far as uncalled for, passed to the trustees, and the creditors were limited to the relief which could be afforded under it, while the stockholders could be subjected only to equality of assessment, and as the trustees could not collect except upon call, and had themselves no power to make one, rendering resort to the president and directors necessary, or, failing their action, then to the courts, it is very clear that the statute of limitations could not commence to run until after the call was made.

The rule laid down in *Scovill* v. *Thayer*, 105 U. S. 143, 155, applies. In that case it was said by Mr. Justice Woods, speaking for the court: "There was no obligation resting on the stockholder to pay at all until some authorized demand in behalf of creditors was made for payment. The defendant owed the creditors nothing, and he owed the company nothing save such unpaid portion of his stock as might be necessary to satisfy the claims of the creditors. Upon the bankruptcy of the company, his obligation was to pay to the assignees, upon demand, such an amount upon his unpaid stock as would be sufficient, with the other assets of the company, to pay its debts. He was under no obligation to pay any more, and he was under no obligation to pay anything until the amount necessary for him to pay was at least approximately ascertained. Until then his obligation to pay did not become complete." And it was held, "that when stock is subscribed to be paid

upon call of the company, and the company refuses or neglects to make the call, a court of equity may itself make the call, if the interests of the creditors require it. The court will do what it is the duty of the company to do. . . . But under such circumstances, before there is any obligation upon the stockholder to pay without an assessment and call by the company, there must be some order of a court of competent jurisdiction, or, at the very least, some authorized demand upon him for payment; and it is clear the statute of limitations does not begin to run in his favor until such order or demand."

Constituting, as unpaid subscriptions do, a fund for the payment of corporate debts, when a creditor has exhausted his legal remedies against the corporation which fails to make an assessment, he may, by bill in equity or other appropriate means, subject such subscriptions to the satisfaction of his judgment, and the stockholder cannot then object that no call has been made. As between creditor and stockholder, "it would seem to be singular if the stockholders could protect themselves from paying what they owe by setting up the default of their own agents." *Hatch* v. *Dana*, 101 U. S. 205, 214. The condition that a call shall be made is, under such circumstances, as Mr. Justice Bradley remarks in the matter of *Glen Iron Works*, 20 Fed. Rep. 674, 681, "but a spider's web, which the first breath of the law blows away." And as between the stockholder and the corporation, it does not lie in the mouth of the stockholder to say, in response to the attempt to collect his subscription, for the payment of creditors, that the claim is barred because the company did not discharge its corporate duty in respect to its creditors earlier. *County of Morgan* v. *Allen*, 103 U. S. 498.

These considerations dispose of the alleged error in not sustaining the defence of the statutory bar.

By § 26, c. 57, Tit. 18, "Chartered Companies" of the Virginia Code of 1873, (p. 551,) it is provided that "no stock shall be assigned on the books without the consent of the company, until all the money which has become payable thereon shall have been paid; and on any assignment the assignee and assignor shall each be liable for any instalments which may

have accrued, or which may thereafter accrue, and may be proceeded against in the manner before provided." And this was the provision of the Code of 1860, (c. 57, Tit. 18, § 24,) and in *Hambleton* v. *Glenn, supra*, it was held "that under that section the assignee and assignor are liable for any instalment which may have accrued or which may hereafter accrue," and to the same effect is *McKim* v. *Glenn*, 66 Maryland, 479.

Defendant claims that of the two hundred and fifty shares for which he subscribed, he took one hundred and fifty shares for three other persons. The stock ledger shows that five certificates of fifty shares each were sent to defendant, made out in his name; and it appears from his evidence that he transferred three certificates for fifty shares each to Hoge, Battle and Williamson, though they failed to have them transferred to their own names on the books of the company. Of the remaining one hundred shares, defendant retained fifty and transferred the other fifty to five other persons whom he had anticipated, when he subscribed, might take them. So far as appears from the stock register the plaintiff remained the original owner of two hundred shares and the assignor of fifty, and no error is assigned as to this fifty.

Section 25 of c. 57, Tit. 18, of the Code of Virginia of 1860, is as follows: "A person in whose name shares of stock stand on the books of a company shall be deemed the owner thereof as it regards the company." Code of 1873, Tit. 18, c. 57, § 27.

So far as creditors were concerned, Hawkins remained a shareholder as to the two hundred shares. *Pullman* v. *Upton*, 96 U. S. 328; *Richmond* v. *Irons*, 121 U. S. 27; *Upton* v. *Tribilcock*, 91 U. S. 45.

The judgment of the Circuit Court cannot be disturbed because the defendant was held liable on two hundred and fifty shares.

It is also objected that interest upon the amount called should have been allowed from the date of the commencement of the suit and not from the date of the decree, but the difficulty with this contention is, that there was no motion for a new trial in the case. The court, so far as appears, gave

no instruction on the subject of the amount of the interest, and the exception to the instruction to find for the plaintiff does not question the amount found by the jury. The Code of Virginia of 1860 provides: "If the money, which any stockholder has to pay upon his shares, be not paid as required by the president and directors, the same, with interest thereon, may be recovered by warrant, action or motion as aforesaid." (Code of 1860, Tit. 18, c. 57, § 21; Code of 1873, Tit. 18, c. 57, § 23.) Interest would, therefore, seem chargeable from the date of the call.

The judgment of the Circuit Court is

*Affirmed.*