## GLENN v. MARBURY.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 1231. Submitte  anuary 11, 1892. — Decided May 16, 1892.

The statute of limitations begins to run against an action against a stock-holder in an insolvent corporation, in the hands of a receiver, to recover unpaid assessments on his stock, when the court orders the assessment to be made.

When such a call is made the action, in the District of Columbia where the common law prevails, must be brought in the name of the company.

THE case is stated in the opinion.

*Mr. Henry Wise Garnett, Mr. Conway Robinson, Jr., Mr. Charles Marshall* and *Mr. John Howard* for plaintiff in error.

*Mr. Martin F. Morris* for defendant in error.

Mr. Justice Harlan delivered the opinion of the court..

This action at law was brought, March 22, 1889, by John Glenn, in his capacity as substituted trustee in a certain deed of trust made by the National Express and Transportation Company, a corporation of Virginia; also, as trustee by virtue of an order passed by the Chancery Court of the City of Richmond, Virginia, in a suit in equity brought by William W. Glenn, suing on behalf of himself and others, creditors of that corporation. Its object was to obtain a judgment against the defendant, Marbury, for the sum alleged to be due from him under an order, in the above cause, making an assessment and call on subscribers to the stock of that company.

The facts necessary to be stated in order to show fully the grounds of the defence are as follows:

In August, 1866, Josiah Reynolds, a citizen of Maryland and a stockholder of the National Express and Transportation Company, suing on behalf of himself and all stockholders of that corporation who should come in and contribute to the expenses of the suit, brought an action in equity in the Circuit Court of the United States for the Eastern District of Virginia, against that corporation — to be hereafter, in this opinion, designated as the Express Company — and against its president, directors and superintendent. The bill set forth that the company had been and was then being conducted in a reckless, extravagant and improvident manner, and that the money subscribed by the plaintiff and other stockholders had been and was being wasted and misapplied in conducting its business, chiefly in ways and for purposes that were illegal and in fraud of the rights of stockholders. The relief sought was an injunction restraining and prohibiting the company from conducting its business in the illegal and improvident manner specified in the bill. The bill, also, prayed that a receiver be appointed by the court to take possession of the property and effects, books of account and papers of the company; that such property and effects might be sold and disposed of, and any money due the company collected by the receiver; and that an account be taken under the order of

the court of its business, its debts and liabilities paid, and the balance distributed among the stockholders. The bill particularly referred to an agreement with one Ficklin which, it was alleged, ought to be set aside as in fraud of the rights of stockholders. The defendants were duly served with process, and one of them, J. J. Kelly, the superintendent of the Express Company, filed an answer. The company appeared and adopted as its own the answer of Kelly.

On the 23d of August, 1866, an order of injunction was issued restraining the defendants "from collecting or taking any proceedings to collect or enforce from the complainant the payment of moneys for or on account of his stock in said company or assignments or calls thereon, either by sales of stock or otherwise, and from making any assessments upon the complainant in respect to or on account of his said stock, and also enjoining and restraining the said company, its directors, agents and servants, from pleading, using, or applying the property, funds, effects and credits of the said company to or for any purposes or objects other than the regular and legitimate express and transportation business for which the said company was organized, and from carrying out or fulfilling the agreement with Benjamin Ficklin, mentioned in said bill or any similar agreement with any other person, and from selling any of the shares of said stock held or owned by the complainant until the further order of this court."

The Express Company, on the 20th day of September, 1866, — having previously appeared and filed its answer in the Reynolds suit — executed to John Blair Hoge, J. J. Kelly and C. Oliver O'Donnell, a deed assigning and conveying to them all the estate, property, rights and credits of the company, of every kind and wherever they might be, including moneys payable to the company, "whether on calls or assessments on the stock of the company," or on notes, bills, accounts or otherwise. The deed was made on certain trusts, among others, that the trustees should permit the Express Company to remain in the possession and use of all the property conveyed or assigned, except debts, claims and moneys payable, until November 1, 1866, and thereafter until the trustees should be

requested by one or more of the creditors secured by the deed, and whose debt or debts should then be due, to take possession of the assigned property : the trustees, however, to take possession at any time, if requested by the company's board of directors. The trustees were required by the deed to proceed without unnecessary delay " to collect all the debts, claims and moneys payable, which are hereby granted or assigned."

On the 31st of December, 1866, the court appointed a receiver of the money, property and effects of the Express Company, "with all the powers, rights and obligations usual in such cases, subject to the control of this court, until the affairs of said company be fully and finally closed up." He was ordered to execute and file, before entering upon his duties, a bond, with sureties to be approved by the court, of $20,000, conditioned for the faithful discharge of his duties as receiver of the funds, property and effects of the Express Company. It was further provided in the order appointing the receiver as follows :

" That upon the execution, approval, and filing of said bond the said receiver shall be vested with all the estate, real and personal, as well as all the money, notes, accounts, assessments due on stock or other securities, or rights in action of the said National Express and Transportation Company, as trustee of such estate and property, for the use and benefit of the creditors of said company and of its stockholders and others who may be interested in the same, with all the powers, rights and authority of a trustee appointed by this court or acting within its jurisdiction and control.

" Such receiver shall have all the powers and authority which ordinarily belong to such trustee, and the said defendants, as well as all other persons who may have the possession or control of any of the money, books, property, effects or things in action of the said National Express and Transportation Company, and especially John Blair Hoge, John J. Kelly and C. Oliver O'Donnell, the trustees named in a pretended assignment referred to in the complainant's petition, are hereby required to assign, transfer and deliver to the said trustee, on being notified of this order, all such money, property, notes,

bonds, estate, real and personal, so in their hands or under their control, and they are also required to execute and deliver all deeds, conveyances, releases, transfers or acquittances that may in anywise be necessary to place any or all of said property or effects so in the hands or under the control of the said receiver, and they and each of them, on being required, shall make all discovery and furnish all information which the said receiver may require in relation to any or all of the property, business or transactions of the said company.

"The said receiver will proceed to collect all the property, money and effects of the said National Express and Transportation Company and convert the same into money, and he will also ascertain the amount of the debts and liabilities of the said National Express and Transportation Company, and, after payment therefrom of all expenses, including counsel fees and costs, with such compensation as the court may allow him, will, from time to time, apply the funds so received and obtained by him in the satisfaction and discharge of the debts of the said company under the orders of this court.

"And if there shall be any sums due upon the shares of the capital stock of the said company the said receiver will proceed to collect and recover the same, unless the persons from whom the said sums may be due shall be wholly insolvent, and for this purpose may prosecute actions at law or in equity for the recovery of such sums in his own name as receiver or otherwise as he may deem best, and shall apply the money so received under the order of this court to the satisfaction and payment of the remaining debts of said company, as well as the legal and necessary expenses of the due execution of this trust, including a reasonable compensation and commission to himself for services on this behalf and also including such necessary and reasonable fees and costs as may be necessary in maintaining, prosecuting, or defending any suit or suits which it may be necessary to prosecute or defend in order to the full execution of this trust."

The receiver gave the required bond, and it was approved by the court on the 12th of January, 1867.

Reynolds having died, Washington Kelley, a stockholder,

was permitted to become a party plaintiff and, with the leave of the court, filed August 20, 1870, an amended and supplemental bill. The receiver reported to the court, December 11, 1880, that he had not been able to obtain possession of any of the company's effects, except two freight cars, and that so far as he could ascertain, in all the States where the company did business, its property and effects had been attached by its creditors. This report being made, "on motion of the defendants John Blair Hoge and J. J. Kelly," the order appointing the receiver was vacated, annulled and set aside, the receiver discharged and exonerated, the injunction dissolved, and the suit dismissed.

On the 4th of December, 1871, W. W. Glenn, suing on behalf of himself and all other creditors of the Express Company, filed his bill in equity, in the Chancery Court of the City of Richmond against that corporation, and its officers, and against the trustees named in its deed of September 20th, 1866. The object of that suit was to collect the assets of the company, including the amounts due from the subscribers to its stock. The proceedings in that cause are fully set out in *Hawkins* v. *Glenn*, 131 U. S. 319. It is only necessary now to state that in the progress of that suit an order was entered December 14, 1880, sustaining the validity of the deed of assignment of September 20, 1866, removing the surviving trustees named in it, with their consent, and substituting in their place John Glenn, who was clothed by that order, "with all the rights and powers, and charged with all the duties of executing the trusts of said deed to the same effect as were the original trustees therein;" Glenn, however, not to take possession of the property covered by the deed, until he gave bond with security for the faithful discharge of his duties as substituted trustee. He gave such bond January 3, 1881, and it was approved by the court.

By the same order a call and assessment of thirty per cent of the par value of each share of stock was made upon stockholders, who were required to make payment to John Glenn, substituted trustee. By a decree entered July 21, 1883, it was adjudged "that John Glenn, trustee, on the payment to him,

within six months from the date of this decree, by any of the subscribers to the stock of the defendant company, or by any other person claimed to be liable on account of said stock, of twenty-five per centum of the original amount of said subscription, with interest thereon at the rate of six per centum per annum, from thirty days from the date of this decree, with any costs incurred heretofore or by said trustee in any suit brought by him heretofore, or which may hereafter be brought before tender of said twenty-five per cent under this decree, to recover of such stockholder or other party, the amount for which he may be responsible on said stock under the decree in this cause, shall execute a receipt therefor to operate as a full acquittance and discharge of all persons on account of such subscription, both of the original subscribers thereto, and of any assignee thereof." By another order, made March 26, 1886, in the Circuit Court of Henrico County, Virginia — to which the cause was removed in 1884 — an additional call and assessment of fifty per cent of the par value of each share of stock was made upon stockholders, who were severally required to pay the said amounts hereby called for and assessed to John Glenn, he being "authorized and directed to collect and receive said call and assessment, and to take such prompt steps to that end, by suit or otherwise, and in such jurisdictions as he may be advised."

Marbury, it is admitted, was an original subscriber for 100 shares of the company's stock, for which he received a certificate, paying twenty per cent only on his subscription. The object of the present suit is to recover from him the sum of $5000, by reason of the above call and assessment of fifty per cent, with interest at the rate of six per cent per annum from March 26, 1886, the date of the order making such call and assessment. He pleaded that he never was indebted, and did not promise as alleged; that the plaintiff's cause of action did not accrue within three years before the commencement of this suit; that the Chancery Court of the city of Richmond had no jurisdiction to render the decree of December 14, 1880; and that the plaintiff, as trustee, had no right to sue in the court below in his own name or otherwise.

At the trial below the court refused to instruct the jury, at the plaintiff's instance, that this action, having been brought within three years after the decree, in the Circuit Court of Henrico County, Virginia, of March 26, 1886, the plea of dimitation constituted no defence. It also refused to instruct the jury, at the instance of the plaintiff, that the decree of July 21, 1883, in the Virginia court constituted no defence, and did not relieve the defendant from liability for the assessment made by the order in that court of March 26, 1886. And, upon the motion of the defendant, the jury were directed to find, and in accordance with that direction returned a verdict, for the defendant, on which judgment was entered.

Upon appeal to the general term the judgment was affirmed upon the authority of *Glenn* v. *Busey*, 5 Mackey, 233, where it was held, in a case similar to the present one, that Glenn could not maintain an action in the court below in his own name as trustee.

Since the decision in *Hawkins* v. *Glenn*, 131 U. S. 319 and *Glenn* v. *Liggett*, 135 U. S. 533, the only questions open for consideration in the present case relate to limitation and to the right of the plaintiff to bring this action in his own name as trustee.

It is not disputed that the time prescribed by the statutes in force in the District of Columbia for the bringing of suits like the present one is three years from the accruing of the cause of action. The defendant contends that liability upon his subscription of stock could have been enforced by the receiver appointed by the Circuit Court of the United States for the Eastern District of Virginia in the Reynolds suit, at any time after the 12th of January, 1867, on which day the receiver's bond was filed and approved by the court; and that, as more than three years elapsed, after that date, and while the Reynolds case was pending, without suit being brought against him, he is protected by the statute of limitation. We are of opinion that this position cannot be sustained. The order of December 31, 1866, in the Reynolds suit was not, in any proper sense, a call or assessment on the company's stock. Nor was it equivalent to one. The deed of September 20, 1866, assigned

and transferred to Blair, Kelly and O'Donnell, trustees, among other property, all moneys payable " on calls or assessments on the stock of the company," and the order of December 31, 1866, in the Reynolds suit vested in the receiver, as trustee, " assessments due on stock," and directed him to proceed in the collection and recovery of " any sums due upon the shares of the capital stock of the said company." But nothing was due from subscribers of stock until a formal call or assessment was made by the company, and no call or assessment could be made by the trustees named in the deed of September 20, 1866, or by the receiver in the Reynolds suit. *Glenn* v. *Macon*, 32 Fed. Rep. 7.

In *Hawkins* v. *Glenn*, the court said (p. 333): "By the deed the subscriptions, so far as uncalled for, passed to the trustees, and the creditors were limited to the relief which could be afforded under it, while the stockholders could be subjected only to equality of assessment, and as the trustees could not collect except upon call, and had themselves no power to make one, rendering resort to the president and directors necessary, or, failing their action, then to the courts, it is very clear that the statute of limitations could not commence to run until after the call was made." See also *Scovill* v. *Thayer*, 105 U. S. 143, 155. If the court, in the Reynolds suit, had intended to make a call for the payment in full of all subscriptions of stock, it would have used language different from that employed in the order appointing the receiver. It is clear that no action could have been maintained by the receiver in the Reynolds suit, in respect to unpaid subscriptions, except to compel the payment of sums due on formal calls or assessments, if any, made by the company prior to the institution of that suit. For these reasons, the defence based upon limitation cannot be sustained. And in conformity with *Hawkins* v. *Glenn*, and *Glenn* v. *Liggett*, we hold that limitation commenced to run, in favor of the present defendant, only from the order in the Virginia court making the call or assessment on subscribers of stock. *Glenn* v. *Williams*, 60 Maryland, 93, 122, 123.

The other question — as to the right of the plaintiff, in virtue

of the authority conferred upon him by the Virginia court, to bring the present action in his own name as trustee, is a more serious one. In *Jackson* v. *Tiernan*, 5 Pet. 580, 597, 599, Mr. Justice Story, speaking for the court, said that "the general principle of law is, that choses in action are not at law assignable. But, if assigned, and the debtor promises to pay the debt to the assignee, the latter may maintain an action for the amount against the debtor, as money received to his use. Independently of such promise, there is no pretence that an action can be sustained." After referring to some adjudged cases, which he said were distinguishable from the one then before the court, he proceeded: " They are either cases where there was an express promise to hold the money subject to the order of the principal, or there was an implied promise to pay it over as it was received to the use of a particular person. The express promise to pay to order bound the party, and excluded any claim for a lien, and any defence for want of privity between him and the holder of the order. The receipt of the money for the use of a particular person necessarily imported a promise or obligation to hold it in privity for such person."

In *Pritchard* v. *Norton*, 106 U. S. 124, 130, Mr. Justice Matthews, delivering judgment, said: "Whether an assignee of a chose in action shall sue in his own name or that of his assignor is a technical question of mere process, and determinable by the law of the forum; but whether the foreign assignment, on which the plaintiff claims, is valid at all or whether it is valid against the defendant, goes to the merits and must be decided by the law in which the case has its legal seat. Wharton, Conflict of Laws, §§ 735, 736." And in *New York Guaranty Co.* v. *Memphis Water Co.*, 107 U. S. 205, 214, the court, speaking by Mr. Justice Bradley, said: "We have lately decided, after full consideration of the authorities, that an assignee of a chose in action, in which a complete and adequate remedy exists at law, cannot, merely because his interest is an equitable one, bring a suit in equity for the recovery of the demand. *Hayward* v. *Andrews*, 106 U. S. 672. He must bring an action at law in the name of

the assignor to his own use. This is true of all legal demands standing in the name of a trustee, and held for the benefit of *cestuis que trust.* Besides the authorities cited in that case, reference may be made to Mitford on Pleading, 123, 125; Willis's Equity Plead. 435, note g; *Adair* v. *Winchester,* 7 Gill & Johns. 114; *Mosely* v. *Boush,* 4 Rand. Va. 392; *Doggett* v. *Hart,* 5 Fla. 215; *Smiley* v. *Bell,* Mart. & Y. Tenn. 378; and the English and American notes to *Ryall* v. *Rowles,* 1 Ves. Sen. 348, and to 2 White & Tudor's Leading Cases in Equity, pp. 1567, 1670 (ed. 1877)."

The right which the Express Company acquired by the defendant's subscription to its capital stock was only a chose in action. It passed by the deed of September 20, 1866, to the trustees Blair, Kelly and O'Donnell, but subject to the condition that a chose in action is not assignable so as to authorize the assignee to sue at law, in his own name, unless the right to do so is given by a statute, or by settled law, in the jurisdiction where suit is brought. This is the well-established rule of the common law, and the common law touching this subject governs in the District of Columbia. If the trustees named in the deed of 1866 had sued in this District for sums due upon calls or assessments on stock, they must have sued in the name of the Express Company for their use, unless the stockholders expressly promised to pay them, or unless such a promise could be implied as matter of law. There was no such express promise by Marbury, although he concurred in the assignment made by the company to those trustees.

But it is said that stockholders must be presumed to assent to every lawful disposition made of its property by the corporation. When this point was made in *Glenn* v. *Busey,* 5 Mackey, 243, it was fully met by Mr. Justice Cox, speaking for the court. After observing that a stockholder in a corporation holds a double relation to it; that, in his capacity as debtor, he has not promised to pay to the company's order or to its assignee, but to the company only; and that as stockholder he would not be held to have given more than the general authority to the corporation to deal with its property, he said: "If we go further than this, we must hold that the mere fact

of being a stockholder in a corporation makes his indebtedness a negotiable one, even against the terms of his agreement with the company and the intention of the parties. Thus, if a stockholder borrowed money from the company on his sealed bond, the argument would be that as his bond is a part of the assets of the company, and he has generally and impliedly assented to the assignment or negotiation of its property, as it may think best, *ergo*, his bond may be negotiated like a promissory note. But this reasoning would not stop at corporations. It would apply equally to partnerships. Each member of a partnership is the agent of all, and all the others are the agents of each, and all or each would have authority to settle debts by the assignment of property of the firm. If, then, one becomes indebted to the firm on an open account, the firm, on the principles before mentioned, could assign or negotiate the debt, and so give the assignee a right of action in his own name. In such action the plaintiff, after stating the original indebtedness and its assignment, which would make a demurrable case, would only have to supplement it by an averment that the debtor was a member of the firm who made the assignment, and his case would be complete. It is hardly necessary to say that this would be a novelty in the law of contracts and actions and pleadings, for which not a semblance of authority could be found."

Is the question as to the right of the trustee Glenn to bring this suit, in his name, any different by reason of the fact that the Virginia court made the call or assessment in question, substituted the plaintiff as trustee in the place of Blair, Kelly and O'Donnell removed, and both authorized and directed him to collect and receive such call or assessment, taking steps to that end by suit or otherwise, and in such jurisdiction as he might be advised? We think not. Undoubtedly the Express Company, having refused or neglected to make the necessary call or assessment, a court of equity could itself make it, if the interest of creditors required that to be done. In other words, as said in *Scovill* v. *Thayer*, 105 U. S. 143, 145, and repeated in *Hawkins* v. *Glenn*, 131 U. S. 335, "the court will do what it is the duty of the company to do." See

also *Glenn* v. *Williams*, 60 Maryland, 93, 113, 114. But the making of the call or assessment by the court, for the company, does not, in the absence of some statutory provision on the subject, change the rule that a demand upon the stockholder to meet a call or assessment, by competent authority, must be enforced in the name of the person or corporation holding the legal title to the stock subscription, and to whom the promise of the stockholder was made. There is no reason why the trustee Glenn could not have sued in the name of the company. For, as said in *Hawkins* v. *Glenn*, concurring with the Supreme Court of Appeals of Virginia in *Hamilton* v. *Glenn*, 85 Virginia, 901, 905, " as this corporation, notwithstanding it may have ceased the prosecution of the objects for which it was organized, could still proceed in the collection of debts, the enforcement of liabilities, and the application of its assets to the payment of its creditors, all corporate powers essential to those ends remained unimpaired."

We concur entirely in the views expressed by Mr. Justice Cox, speaking for the court, in *Glenn* v. *Busey*, where will be found a careful and elaborate discussion of this question. In harmony with the decision in that case, we hold that the present suit cannot, consistently with the principles of the common law — which is the law, upon this question, for the District of Columbia — be maintained by the plaintiff in his own name, as trustee. We are aware that a different rule obtains in some jurisdictions where the common law has been modified by statute or by a settled course of decisions, but we are unable to hold that the law of this District is otherwise than has been indicated in this opinion.

*Judgment affirmed.*