THOMAS J. WELLS, Respondent, *v.* CHARLES KELSEY, Appellant.

*Trover and Conversion—Evidence of Value—Plaintiff's Evidence of Cost—Rebuttal.*

When the Plaintiff attempts to establish the value of property converted by his own mere opinion of value under oath, it is competent to show that at two sales of the property prior to the commencement of the action a much less value was attached to it.

It is also competent to show the value of other articles included in the bill of purchase, for the purpose of showing the estimated value of the property converted at the time of its purchase by the Plaintiff.

Appeal from the Supreme Court. The action was to recover damages for the conversion by the Defendant of two boilers and a quantity of brick, with some other articles of minor value. These had been put in a building on Defendant's premises, in the summer of 1858, by his tenants, Durkee & Case, to be used by them in their business, which was the manufacture of soda, saleratus, and drugs. The building was destroyed by fire on the 30th day of August, 1860, which terminated the demise, under a provision embodied in the lease; and a question arose whether the articles thus introduced by the tenants belonged to the Plaintiff, to whom they sold them after the fire, or to the Defendant, who claimed them, in whole or in part, as fixtures annexed to his freehold.

On the trial, at the Kings Circuit, clear proof was made of the Plaintiff's title; and the practical issues came to be, as to the fact of conversion by the Defendant, and as to the actual value of the property. On both these questions there was a conflict of evidence; and the jury found adversely to the Defendant.

The only questions raised on the present appeal relate to the exclusion of evidence offered on the issue, as to the value of the property converted.

Those questions arose in this wise: the Plaintiff was sworn as a witness in his own behalf, and testified, among other things, that he bought the property in question on the 1st of Oct., 1860; that,

in his own opinion, the two boilers, at the time of the alleged conversion, were worth as much as if they were new, and were of the value of $800 ; that the boiler-front was worth at least $50 more; that the boiler bolts were worth at least $40, and the brick at least $155 ; thus making an aggregate of $1,045, as the value of the property converted.

To weaken the force of this evidence, the Defendant, on his cross-examination, called for the production of his bill of sale. This evidence was excluded, and the Defendant excepted.

It afterwards appeared, by the testimony of Durkee & Case, that they had been some weeks endeavoring to sell the property, before they effected a sale to the Plaintiff; that the boiler had been two years in use by them before the fire; that the part of the building in which they were was not much injured by the fire, but was afterwards unoccupied; that the boilers were second-hand when they bought them, and that they were lying on a vacant lot at the time of the original purchase.

The Defendant, on the cross-examination of Durkee, interrogated him as to the price they paid for the boilers. The evidence was excluded, and the Defendant excepted.

He then introduced the testimony of several boiler manufacturers, tending to show that the boilers, when new, were not worth (to exceed) $550, and that in their condition, at the time of the alleged conversion, they were worth only from $160 to $350. At the time of the trial they were not in use, but were still lying on an unoccupied lot of the Defendant.

The jury found a verdict in favor of the Plaintiff for $751.44. Judgment was entered accordingly, and it was subsequently affirmed on appeal to the General Term in the Second District (15. Abbott, 53 ; 38 Barbour, 242).

*Britton & Ely* for Appellant.

*A. N. Weller* for Respondent.

PORTER, J.—The principal issue on the trial was as to the value of a pair of boilers, at the time of their conversion by the Defendant, which was three days after they were sold to the

Plaintiff. They were second-hand boilers two years before, when they were bought by Durkee & Case, and they had been exposed to injury from disuse as well as from use.

The Plaintiff testified, as a witness in his own behalf, that their value was $800, and that they were worth as much as if they were new. This was competent evidence of value, but it was inconclusive in its nature. It was an estimate resting upon the opinion of a party subject to bias; and it related to second-hand articles, having no certain and definite market value. The statement carried with it no absolute assurance of verity; and, even if he made it in perfect good faith, the accuracy of his judgment might be open to question, in view of facts unknown to the jury, but within his personal cognizance. It was the right of cross-examining counsel to elicit these, if they were inharmonious with his evidence. They were at liberty to show that he bought the boilers three days before, on credit, at a fair and open sale, from parties who had used them, and knew their value, for half the sum at which he now assessed them. This seems to be conceded in the opinion delivered in the Court below; but it was held that a different rule prevailed where, as in this case, the inquiry involved the value of other articles included in the same sale. We do not think such a distinction well founded, nor do we find it recognized in the authorities. The objection, if it has any force, goes to the facility of proving the fact, and not to its admissibility as legal evidence.

The particular form of the transaction made it necessary to ascertain the relative value of the articles included in the bill of sale. If the Plaintiff had testified, in answer to the inquiry, that the other articles embraced in the $1,200 purchase were worth twice as much as the boilers, it would be a reasonable inference that his present valuation of the latter considerably exceeded their cost. It is true that the price which he paid for them would be indecisive as to their actual value; but it might well have a material bearing on the degree of weight to which his estimate of that value was entitled.

But even if this inquiry was properly disallowed, the Court

erred in excluding proof of the price paid specifically for the boilers, on their purchase by the vendors of the Plaintiff. It is assumed, in the opinion delivered at the General Term, that if evidence of this kind ihad been offered it would have been admissible within the rule, and the fact disclosed in the printed case, that such proof was tendered and rejected on the trial, seems to have been overlooked. The authorities on this subject are decisive and uniform, and we think the rule they establish is sound in principle (Campbell *v.* Woodworth, 20 New York, 499 ; Dixon *v.* Buck, 42 Barbour, 70 ; Crounse *v.* Fitch, 23 Howard, 350 ; Suydam *v.* Jenkins, 3 Sandf. 628).

While the law admits the opinions of those competent to judge the application in this, as in other cases, of the usual tests of truth, on the cross-examination of the witness it is legitimate to ascertain his means. of knowledge, to scrutinize the grounds of his judgment, and to elicit such specific facts as may aid in applying and weighing the evidence. Such facts are often at variance with the opinions expressed by the witness, which, from the nature of the case, are usually founded on data unknown to the Court. On questions of value there is generally room for wide diversity of judgment; and when estimates are loosely made, they should be subject to all reasonable scrutiny. In this instance the inquiries were within the range of fair and legitimate cross-examination, and we think they should have been allowed by the Court. A knowledge of the prices actually paid for the boilers on two business sales, both ante litem motam, might well aid the jury in weighing the conflicting estimates, and in reaching an intelligent and just conclusion.

The judgment should be reversed, and a new trial should be ordered.

All the Judges concurring except HUNT and GROVER, who took no part.

Judgment reversed, and a new trial ordered.

JOEL TIFFANY,
State Reporter.