MICHAEL CURREN AND CHARLES SEBRING v. MARENUS AMPERSEE.

*Contract—Evidence—Impeachment.*

1. It is competent for the plaintiffs, who seek to recover for the use of screws which they claim they permitted, at the request of the defendant, to remain under a building which they had moved for him, to show the number of screws thus used, and the length of time they were allowed to remain under the building.

2. Where, in a suit to recover for moving a building, the defendant seeks to recoup damages for alleged injury to the building, the opinion of a third person, expressed to the plaintiffs before the removal, as to the proper method of guarding against such injury, is immaterial.

3. Where, in such a case, the damages sought to be recouped are large, and the defendant testifies that the building was worth $400 or $500 when he bought it, it is competent to show on his cross-examination, as tending to discredit his statement of its value, that he only paid $85 for it.

4. Where, upon the trial of an appeal case, a witness testifies that he was not present when the contract sued upon was made, he may be contradicted by showing that he testified to the contrary on the trial in justice's court, if a proper foundation is laid; but it is not competent to show that his testimony as to his presence was contradicted by that of other witnesses.

Error to Kalamazoo.     (Buck, J.)     Submitted on briefs June 9, 1893.     Decided July 26, 1893.

*Assumpsit.*     Defendant brings error.     Reversed.     The facts are stated in the opinion.

*Oscar T. Tuthill,* for appellant.

*Frank E. Knappen,* for plaintiffs.

HOOKER, C. J.     The plaintiffs brought this action to recover for their services, and the use of some screws, in moving a building for the defendant.     They assert that an oral contract was made, by which they were to have $10 a day for their labor in doing this work, and that the screws were subsequently left under the building, for a time, at defendant's request.     The defendant claims that the plaintiffs were to receive no pay until the house was placed upon his lot in good condition, and that it was greatly injured by the plaintiffs.     He seeks to recoup his damages arising therefrom.     Upon the trial each party offered proof tending to prove his version of the contract. The house was shown to have been injured by moving, and each party offered testimony tending to show that the other was responsible therefor.

Michael Curren, one of the plaintiffs, testified that after the house reached its destination he received a letter from defendant's counsel.     It was offered in evidence, and is as follows:

"July 2, 1891.

"*Dear Sirs:* You are hereby notified and required to proceed forthwith and put my building you moved on my

lot on Walbridge street in good shape, as you undertook and promised to do, and in default of your so doing this week I shall put men there to do it for you, and warn you not to remove the screws from under the building until the property is fixed and put in shape, whether you go on and do it or not.

                    "Yours truly, M. AMPERSEE.   Per T."

The examination continued as follows:

"*Witness:* The screws remained there quite awhile. Ten dollars would be a proper charge for the use of them. We rent each screw out at 50 cents a day. There were about 30 screws.

"*Q.* You had 30 screws under there, and stayed there several days,—two or three weeks.

"*Mr. Tuthill:* I move to strike that out as immaterial and irrelevant.

"*The Court:* I think that is proper.

"*Mr. Tuthill:* Note an exception."

This evidence was admissible under the claim for the value of the use of the screws.

On cross-examination Mr. Sebring, one of the plaintiffs, was examined as follows:

"I am one of the plaintiffs. Have followed the moving business for about five years. When I talked with Mr. Ampersee, I told him we would put the building there the best we could. Took the job for $10 a day, and do it as quick as we could. The house was a heavy building, posted and beamed, 30 by 36 feet. It was in fair condition. Had good paper on the walls. Sills were pretty near sound. The first thing we did was to raise the house, and put timbers under it 24 feet long. Drew the house 15 rods before putting long timbers in. Put trusses in after we got started. The building could not have been moved safely the distance it went. If there had been a rod put through the sills, it would have made no difference. It could not have been moved without tearing the plaster off and partitions out. I told Mr. Ampersee, before commencing the job, that it wasn't worth moving, and he laughed at us. Know Mr. Wicks, the carpenter. He passed by the house several times when we were moving it. Had some talk with him.

"*Q.* Didn't he tell you and Curren, both, before you

moved that building, to move it safely you should put rods through the sills?

"*Mr. Knappen:* I object to that as immaterial,—whether some other man told him to do it some other way.

"*The Court:* I think that question would be objectionable, as to what Wicks said.

"*Mr. Tuthill:* Note an exception.

"*Q.* Wasn't Mr. Wicks there, talking to you about that, before Mr. Ampersee came up to see what you were doing?

"*Mr. Knappen:* I object to that for the same reason.

"*The Court:* The objection is sustained.

"*Mr. Tuthill:* Note an exception."

The opinions of Mr. Wicks were properly excluded as immaterial.

The defendant was cross-examined as follows:

"*Q.* These young men were depending on their labor for their living?

"*Mr. Tuthill:* I object to it as immaterial.

"*The Court:* Take it.

"*Mr. Tuthill:* Note an exception.

"*Witness:* Yes, sir; they wanted to work by the day. They said it would take a week or 10 days. When they got it on the lot, the building was spread."

Counsel for plaintiffs contends that this testimony tended to disprove the contract as testified to by defendant, the argument being that they would not have been disposed to make such a contract. Certainly, the fact that they depended upon their labor for a living was immaterial, and, if it had not the bearing contended for, should have been excluded. We think it was of no force, in the direction of establishing the proposition that the plaintiffs did not agree to deliver the building to defendant in good condition, upon his premises, which was the point involved. All agreed that they were to be paid by the day. The testimony should have been excluded.

Error is assigned upon the following: The defendant testified:

" I put 100 rolls of paper on the house. When I bought

the house, it had good gilt paper on it. After they got through, it was worth $200 less than when I bought it. Plaintiffs never said the building wasn't worth moving.

"*Mr. Tuthill:* The question as to what he gave for this building, I move to strike out as immaterial.

"*The Court:* I think that may stand.

"*Mr. Tuthill:* Note an exception."

The record does not show how this question arose, but it was proper, as bearing upon the question of damages. Defendant was seeking to recoup large damages for injury to his building. He had testified that it was worth four or five hundred dollars when he bought it. The price he paid, viz., $85, was legitimate proof upon this subject, and tended to discredit his statement of its value.

Michael F. Miller testified upon behalf of plaintiffs, upon rebuttal, as follows:

"*Q.* You are engaged in the shoe business here?

"*A.* Yes.

"*Q.* Were you one of the jury that tried the case of *Curren & Sebring v. Ampersee,* in Justice Harris' court?

"*A.* Yes, sir.

"*Q.* Do you know Mr. Hill, the son-in-law of Mr. Ampersee?

"*A.* Yes, sir.

"*Q.* Did you hear his testimony in the last trial, on which you found a verdict?

"*A.* Yes, sir.

"*Q.* What did he swear about the original bargain between the parties?

"*A.* He said he was present when it was made, and heard it.

"*Q.* Where did he say he stood?

"*A.* In a grocery store, somewhere near a barrel.

"*Q.* After he was sworn, did Mr. Sebring and Curren and Seifers and the little boy go on, and testify he was not there?

"*Mr. Tuthill*: I object to it as immaterial and hearsay.

"*The Court*: Take the answer.

"*A.* They did.

"*Q.* What did he say the original bargain was?

"*A.* I don't recollect what he said to that, exactly. I suppose I would recollect if it was brought to my memory.

"*Q.* Do you recollect Mr. Ampersee's testimony was, the bargain was not to pay a cent if it was not put in good shape?

"*Q.* That is Mr. Ampersee's testimony.

"*Q.* Did Mr. Hill swear to the same thing?

"*A.* He did."

It was proper to contradict Hill by showing that at the trial in justice's court he said that he was present when the contract was made, by way of impeachment, a proper foundation having been laid for it; but it was not proper to show that " Sebring and Curren and Seifers and the little boy" testified in justice's court that Hill was not present. Such testimony was hearsay.

It follows that the judgment must be reversed, and a new trial ordered.

The other Justices concurred.