FT. WORTH & R. G. RY. CO. v. BAILEY.†

(Court of Civil Appeals of Texas.    March 16, 1911.    On Motion for Rehearing, May 4, 1911.)

1. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL.

Instructions covered by those given are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

2. TRIAL (§ 253*) — RAILWAYS — INJURY TO BRAKEMAN COUPLING CARS—INSTRUCTIONS.

In an action for injury to a railway brakeman while coupling cars, an instruction that, if he was injured through the engine moving backward, he could not recover was properly refused, as ignoring evidence on the issues of negligence in equipment of the car coupled to the engine, and concerning defects in the engine.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

3. MASTER AND SERVANT (§ 278*)—RAILWAYS —INJURY TO BRAKEMAN COUPLING CARS— NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action for injury to a railway brakeman while coupling cars caused by backward movement of an engine, evidence *held* to warrant a finding that the engineer was negligent in releasing the air brakes, thereby causing the engine to move.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972; Dec. Dig. § 278.*]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by C. N. Bailey against the Ft. Worth & Rio Grande Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Andrews, Ball & Streetman and Chapman & Lockett, for appellant. McLean & Carlock, for appellee.

WILLSON, C. J.    The appeal is from a judgment in favor of appellee against appellant for damages for personal injuries suffered by the former while engaged in the service of the latter as a brakeman.

Briefly stated, the circumstances of the accident were as follows: It became necessary in the transaction of appellant's business at Tolar to move backwards to a point on the track a train consisting of an engine and 15 cars, and then to detach the engine from the cars by uncoupling the connections between the tender of the engine and one of the cars. When the engine reached the point on the track where it was to be detached from the remainder of the train, the appellee, whose duty it was to uncouple the connections, signaled the engineer to stop the train. The engineer did so, and while appellee was between the tender of the engine and the car to which it was coupled, standing on the footboard of the tender, endeavoring to turn a cock forming a part of the air brake connection between the engine and the car, preparatory to uncoupling same, the engine moved far enough towards him to force him against pieces of iron called by the witnesses "chafing irons" or "man-killers," attached to the car and projecting out from it towards the tender about 13 inches. In this way appellee was crushed between the tender and the chafing irons on the car, and thereby seriously injured.

In his petition appellee alleged that the car coupled to the tender of the engine was equipped with chafing irons "situated about six to twelve inches above the drawheads, and extending out some six or ten inches beyond the body of the car," the presence of which, he further alleged, rendered the performance by him of his duty to uncouple the car and tender extradangerous. He alleged that appellant was guilty of negligence in permitting the car so equipped to be in said train near the engine. He further alleged that appellant's agents in charge of the engine were guilty of negligence in "permitting the air on said engine to be released, and thereby permitting the said engine to sway or move back upon and against the plaintiff while he was in the act of uncoupling the said cars, and his position on said footboard at said time being then and there known to the said engineer in charge of said engine, or should have been known to him in the exercise of ordinary care." Finally he alleged that appellant was guilty of further negligence, "because of the defective, unsafe, and dangerous condition of the said engine, whereby steam was allowed to escape through the cylinders, or in some other manner not precisely known to the plaintiff, causing the said engine to move back upon and against him, instead of remaining still or stationary while he was performing the said work."

Appellant's answer was a general denial, a plea setting up that the car alleged to be improperly equipped was a foreign car

tendered to it in due course of business, and that same was in good condition and reasonably safe, and a plea that appellee was guilty of contributory negligence, in that he went between the cars and attempted to uncouple them while the train was in motion. In accordance with a verdict, which we think is supported by the evidence, a judgment was rendered in appellee's favor for the sum of $10,000.

Complaint is made of the refusal of the court to give the jury certain special charges requested by appellant. One of these was to the effect that negligence could not be predicated upon the mere fact that appellee was injured, nor upon the fact that the engine and other appliances were defective or out of repair, unless the condition of same was known to appellant at the time, or would have been known to and remedied by it before the accident occurred, had it exercised ordinary care. Another was to the effect that appellee was not entitled to recover, notwithstanding negligence on the part of appellant, if, by the exercise of ordinary care, he could have avoided the accident. And another was to the effect that appellee was not entitled to recover, if the accident was not due to negligence, either on his part or the part of appellant, but "was such an accident as might occur without the fault of any one."

[1] The instructions refused were sufficiently given in the court's main charge and other special charges given at the instance of appellant. Appellant's fourth, fifth, and seventh assignments, which present these matters, therefore are overruled.

[2] By its sixth assignment, appellant complains of the refusal of the court to instruct the jury as requested by it, as follows: "If you find from the evidence that plaintiff was caught and injured by reason of the slack from the engine moving it back, you will return a verdict for the defendant." To have so instructed the jury would have been to ignore issues as to negligence made by the pleadings and the evidence. There was testimony tending to support the allegations in the petition with reference to the equipment of the car coupled to the tender of the engine, and with reference to defects in the engine. This being true, it would have been error to have instructed the jury as requested.

[3] The court instructed the jury that if the engineer, while appellee was engaged in an effort to uncouple the car from the tender, released the air on the engine, thereby causing it to move toward and against appellee, whereby he was injured, to find in his favor, if they believed he was free of fault, and that the act of the engineer in so releasing the air was negligence. It is insisted that there was no evidence tending to show that in releasing the air at the time he did release it the engineer was guilty of negligence. It was shown that the engineer did release the air on the engine, and that at the time he released it he knew that appellee was between the car and tender, engaged in uncoupling same. Appellee testified that at the time he began his attempt to uncouple the car and tender, the engine had stopped and was standing still. He further testified that he did not thereafterwards signal the engineer to move the engine, and that no one else had a right while he was performing the service to give such a signal. Appellee further testified that after it had stopped moving the engine again moved far enough towards him to crush him, as charged in his petition. The witness Lytle, in charge of the train as conductor, testified: "If, after the engine is stopped, the engineer should continue to hold the air, that would hold everything perfectly still; and if the engineer should hold the air on the engine there would be no danger to a man, even in between the cars, to make an uncoupling." The engineer testified: "If, after you stop your train, you hold the air on it, then there is no possibility of the engine moving one way or the other." The engineer further testified: "After bringing the engine to a stop, after I received the stop signal, I usually release the air on the engine. I do this because there is no need holding the air on the engine after it comes to a stop." We think the testimony referred to authorized the submission to the jury of an issue as to whether, under the circumstances, the act of the engineer in releasing the air brakes on the engine was negligence or not.

The verdict is attacked as excessive. We will not recite the testimony pertinent to that phase of the case. We have considered it carefully, and are of the opinion that the verdict cannot be said, as a matter of law, to be excessive.

There are other assignments in appellant's brief. Each of these has been considered with reference to the record, and each, we think, is without merit.

An error which would justify us in setting it aside not having been shown, the judgment is affirmed.

### On Motion for a Rehearing.

Appellant insisted "that," quoting from its eighth assignment, "there was no evidence tending to show that the engineer was guilty of negligence in releasing the air on his engine at the time he did," and that therefore the trial court erred in submitting to the jury an issue as to negligence on his part. In disposing of the contention, it was stated in the opinion that the engineer at the time he released the air on the engine "knew that appellee was between the car and tender, engaged in uncoupling same." In the motion the statement is challenged as unauthorized by any testimony in the record. The complaint is a just one. The testimony did not show that the engineer knew that appellee was between the car and tender.

·However, we do not think it follows that the trial court erred in submitting an issue as to whether he was guilty of negligence as charged in the petition or not.

The engineer testified: "Before I started my engine back on this occasion, Mr. Bailey came up and told me what we were going to do, and I then knew that we had to cut the engine off from the balance of the train in order to do that work. I knew that when he went to cut the engine loose from the car that it was attached to that he would stand on the footboard to do that." Appellee testified that at a time when the train was "just in the manner of stopping," in obedience to a signal given by him, he turned the angle cock attached to the air brake connection on the car; that after the train stopped he waited a moment "to see if the slack would come back," and then, standing on the footboard of the tender, endeavored with his right hand to turn the angle cock attached to the engine; that, failing in his effort, he changed his position and was hurt while trying to turn the cock with his left hand; that during the time he "was making these two efforts to turn the angle cock on the tender the cars," using his language, "were standing perfectly still," and that the "engine came back" on him. He further testified: "Whatever a brakeman gives the engineer a signal to do, that is what the engineer is supposed to do, until he gets a signal to do something else. If you give the engineer a signal to stop, he is not supposed to move the engine until you give him a signal to that effect. After he stops in response to your signal, he is supposed to stand there until you give him a signal to move. * * * I did not give any signal to anybody to move that engine from the time I gave the signal to stop until I got hurt, and no one else of the train crew had any authority at that time to give any signal to move the train or the engine." The witness Lytle, who was the conductor of the train, testified that "if, after the engine is stopped, the engineer should continue to hold the air that would hold everything perfectly still and if the engineer should hold the air on the engine there would be no danger to a man, even in between the cars, to make an uncoupling." The engineer further testified: "If, after you stop your train, you hold the air on it, then there is no possibility of the engine moving one way or the other. * * * When we bring an engine to a stop by means of the application of the air, and then the angle cock is turned somewhere, that leaves the air on the engine brakes until it is released. When the air is then released on the engine, there is sometimes a slight movement of the engine in the direction in which the reverse lever is set—in the direction in which the engine was last moved. * * *

On this occasion, when I received the stop signal, I applied the air and the train came to a stop, and I then released the air."

We think the testimony recited is sufficient to show that an issue was made as to whether the engineer was guilty of negligence in releasing the air on his engine at the time he did release it, or not. We do not understand the testimony to be uncontradicted, as appellant insists it was, that it was usual and customary for an engineer, under such circumstances, after stopping his engine, to release the air on it, and therefore that appellee should have expected, and that the engineer had a right to assume he would expect, the movement of the engine which, appellee said, caused the injury to him. As noted above, appellee testified that the engineer, after stopping his engine in response to the signal given to him, "was supposed" not to move it again, until he was given a signal to do so.

The motion is overruled.