RICH et al. v. PARK.   (No. 5315.)†

(Court of Civil Appeals of Texas. Austin. Feb. 17, 1915. On Motion for Rehearing, May 26, 1915.)

1. CORPORATIONS ⟸269 — LIABILITY OF STOCKHOLDERS—CALLS.

Proof of a subscription and a valid call upon stockholders makes out a prima facie case, in an action to recover on stock subscriptions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 887, 888, 980, 1149–1159, 2277; Dec. Dig. ⟸269.]

2. TRIAL ⟸143—PROVINCE OF JURY.

Where the evidence on an issue is conflicting, it should be submitted to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. ⟸143.]

3. CORPORATIONS ⟸244 — STOCKHOLDERS — LIABILITY—TRANSFER.

Where corporate stock is transferred before the whole of the subscription price has been paid, and the transfer is duly recorded, the transferror is usually discharged from further liability upon the subscription.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 960–977; Dec. Dig. ⟸244.]

4. APPEAL AND ERROR ⟸1064 — REVIEW — HARMLESS ERROR.

In an action for amounts uncalled on contracts for subscriptions to corporate stock, the giving of a special charge, which was in conflict with the general charge and informed the jury that a bona fide transfer of the stock would not defeat the action, cannot be held harmless; the charges being contradictory, so that it could not be determined which the jury followed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. ⟸1064.]

5. CORPORATIONS ⟸269 — STOCKHOLDERS — LIABILITY—BURDEN OF PROOF.

A creditor seeking to recover amounts due on a subscription contract to corporate stock has the burden of proof.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 887, 888, 980, 1149–1159, 2277; Dec. Dig. ⟸269.]

6. TRIAL ⟸252—INSTRUCTIONS.

In an action for amounts claimed to be due on contracts for subscriptions to corporate stock, a charge that, unless the jury found by a preponderance of the evidence that defendants paid for the stock, the verdict should be for plaintiff for the amount claimed, is erroneous as allowing a verdict for plaintiff without regard to the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. ⟸252.]

7. CORPORATIONS ⟸269 — STOCKHOLDERS — ACTION ON SUBSCRIPTIONS—EVIDENCE.

In an action against subscribers to corporate stock to recover amounts uncalled for, it is improper to exclude evidence of any of the property delivered by the subscribers to the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 887, 888, 980, 1149–1159, 2277; Dec. Dig. ⟸269.]

---

⟸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

**8. CORPORATIONS ⚖⚖269 — STOCKHOLDERS — ACTION ON SUBSCRIPTIONS—EVIDENCE.**

In an action against the original subscribers to corporate stock to recover on their contracts, evidence that their transferee sold the corporate business for more than he paid is material on the question of the value of a stock of goods transferred by the subscribers in payment of their subscriptions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 887, 888, 980, 1149–1159, 2277; Dec. Dig. ⚖⚖269.]

**9. WITNESSES ⚖⚖331½ — IMPEACHMENT — EVIDENCE.**

Where a purchaser of the property of a corporation testified as to the value of a stock of goods transferred by original subscribers in payment of their subscriptions to the stock, evidence that he received more than he paid for it is admissible to impeach his credibility.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. ⚖⚖331½.]

**10. WITNESSES ⚖⚖266—CROSS-EXAMINATION —RIGHT.**

The right of cross-examination is a valuable one, and its denial upon a material matter is reversible error.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 907–912, 914–920, 922; Dec. Dig. ⚖⚖266.]

**11. VENUE ⚖⚖22—PRIVILEGE—RESIDENCE.**

One of several subscribers, sued for sums due on corporate stock, is not entitled to assert his privilege to be sued in the county of his residence, where the venue was located in a county where other subscribers resided.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 35–37; Dec. Dig. ⚖⚖22.]

**12. JUDGMENT ⚖⚖641—CONSTRUCTION.**

An order of a referee in bankruptcy, declaring that the original subscribers to stock of a corporation were liable for sums unpaid, and that the trustee might maintain suit therefor, is a mere administrative order for the purpose of authorizing the trustee to file suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1155; Dec. Dig. ⚖⚖641.]

**13. JUDGMENT ⚖⚖731 — CONCLUSIVENESS — MATTERS CONCLUDED.**

Where an order of the referee in bankruptcy finding that the original subscribers to corporate stock were liable for amounts unpaid did not dispose of defenses raised, the order does not, in a subsequent suit by the trustee, conclude the subscribers as to those defenses.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1259, 1261; Dec. Dig. ⚖⚖731.]

**14. JUDGMENT ⚖⚖729—CONSTRUCTION—CONCLUSIVENESS.**

Where an order of a referee in bankruptcy, finding original subscribers to the stock of an insolvent corporation liable on their contracts, provided for suit by the trustee, and declared that in such suit the subscribers might urge any defenses they desired, the order is not a conclusive adjudication as to their liability.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1262; Dec. Dig. ⚖⚖729.]

On Motion for Rehearing.

**15. CORPORATIONS ⚖⚖244 — STOCKHOLDERS' LIABILITY.**

A purchaser of corporate stock, who buys with knowledge that the stock has not been fully paid in, is liable for the balance, notwithstanding representations that it was paid for, but if he buys without such knowledge he is not liable; the purchaser not usually being chargeable with notice that amounts are due on stock which he in good faith purchases in the open market.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 960–977; Dec. Dig. ⚖⚖244.]

**16. CORPORATIONS ⚖⚖244—SUBSCRIBERS—LIABILITY.**

Under Const. art. 12, § 6, declaring that no corporation shall issue stock except for money paid, labor done, or property actually received, subscribers to the stock of a corporation who had not fully paid for stock received are guarantors of the balance due regardless of transfer.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 960–977; Dec. Dig. ⚖⚖244.]

Appeal from District Court, McLennan County; Tom L. McCullough, Judge.

Action by M. C. H. Park, as trustee, against B. T. Rich and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Spann & Spann, of Temple, and Sleeper, Boynton & Kendall, of Waco, for appellants. J. D. Williamson, of Waco, for appellee.

### Statement of the Case.

RICE, J. The Rich Dry Goods Company was duly incorporated October 21, 1909, with B. T. Rich, S. D. Stitt, Frank Leahy, and J. S. Thompson as original stockholders therein, Rich for 50 shares at $100 per share, Stitt for 64 shares at $100 per share, and Leahy and Thompson jointly for 36 shares at $100 per share—amounting in the aggregate to $15,000. They constituted the board of directors of said corporation, and claimed to have transferred to said corporation, in full payment for such shares a stock of goods, wares, and merchandise, mercantile notes and accounts, furniture and fixtures, valued at $15,000; whereupon said corporation issued said shares of stock to them, showing on their face to be fully paid and nonassessable. A dry goods business was thereafter conducted by said corporation until about the 31st day of January, 1910, when appellants sold all of their shares of stock therein to one Hallenbeck, who paid them full value therefor, and Hallenbeck & Sons, as stockholders in said corporation, continued to operate said business for about a month thereafter, when they sold their entire interest therein to one Cordell, who operated the same until the 17th of February, 1911, at which time said corporation was adjudged a bankrupt by the United States District Court at Waco, and appellee M. C. H. Park was on the 20th of March, 1911, duly elected trustee of said bankrupt estate, who, after having qualified as such, took possession of the effects of said concern and reduced all of its assets to cash, reporting to the referee in bankruptcy that they were not sufficient to discharge the debts of said estate, and made an application to said referee, stating said facts, and further stating that although stock in said corporation had been issued to said Rich, Stitt, Leahy, and Thompson in

⚖⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the amounts above named as fully paid and nonassessable, they had not in fact paid said amounts therefor, but Stitt had only paid $1,220.66, Rich had only paid $983.33, and that Leahy and Thompson had only paid $708, leaving said stockholders still indebted to said corporation in the following amounts, Stitt for $5,179.34, Rich for $4,016.67, and Leahy and Thompson jointly in the sum of $2,892; and prayed that a call be made upon said stockholders requiring them to pay the balance due on said stock. Whereupon, said referee, after a hearing, entered an order finding the amounts due to be as stated by the trustee, and granting said application and directing said parties to pay within three days said balances so found to be due on their stock; and, in the event of failure so to do, the trustee was directed to bring suit against each of them for the respective amounts due by them. But it was further recited therein that said order should not be construed to prevent the trustee or any of the parties sued by him pursuant to the provisions thereof, from showing payment for said stock, nor from asserting or from offering evidence to establish, or from proving, if the facts so justified, any cause of action or defense such trustee or other party may have to assert or make in such suit or suits, action or actions. Said parties having failed to pay said amounts as directed, the trustee brought this action on the 12th day of March, 1913, to enforce payment thereof, alleging the foregoing facts.

After a plea of privilege by Stitt to be sued in Bell, the county of his residence, all of the parties answered by general denial and two special defenses, to wit: First, admitting that they were original subscribers for the capital stock of said bankrupt corporation, but alleging, however, that they had fully paid therefor by delivering to said corporation goods, wares, and merchandise, fixtures, and mercantile notes and accounts of the value equal to the par value of said capital stock. Second, that, irrespective of whether said stock was fully paid or not, each of them had, in good faith, while said corporation was solvent and a going concern, transferred all of their stock in said corporation to Hallenbeck, by reason of which they were absolved from further liability thereon to said corporation or to said trustee for any unpaid portion of their subscription to said capital stock.

Appellee interposed a general denial of all of the allegations in appellants' special answers, and specially denied that said stock of goods, wares, and merchandise, etc., alleged to have been transferred by appellants to said corporation in payment for said capital stock was of the value stated by appellants, but that said property so transferred by appellants to said corporation in payment for their said stock was only sufficient to pay the sum of $2,860.10 thereon, leaving the balance of said capital stock unpaid. And further answering, alleged that appellants had not transferred their stock in said corporation in good faith, but that the transferee thereof had notice that the same was unpaid, and had not assumed appellants' obligations on said unpaid stock. And further pleaded res adjudicata, in that all matters pleaded in defense by appellants had been adjudicated by the referee in bankruptcy in making a call for said unpaid stock.

A jury trial resulted in a verdict and judgment against each of the appellants for the following amounts, to wit: B. T. Rich, $1,640; S. D. Stitt, $2,160; and Frank Leahy and Joe S. Thompson jointly in the sum of $1,200—from which this appeal is prosecuted.

### Opinion.

Appellants assign as error for review: First. The refusal of the trial court to peremptorily charge a verdict in their favor (a) at the close of plaintiff's testimony, (b) at the close of the case before charging and submitting the issues to the jury, which points are presented under the first and second assignments of error. Second. Incorrect, contradictory, and misleading charges of the court; the specific errors complained of being presented by the third, fourth, fifth, sixth, seventh, and eighth assignments of error. Third. The unwarranted abridgment by the trial court of their right of proper cross-examination, presented under the ninth assignment. Fourth. The denial of appellant Stitt's plea of privilege to be sued in the county of his residence, presented by the tenth assignment. All of which we will consider seriatum.

[1, 2] With reference to the first, it may be stated that the plaintiff introduced the following evidence and rested: First, the order of the bankruptcy court adjudicating the Rich Dry Goods Company a bankrupt; second, order approving the bond of Park, as trustee of said bankrupt estate; third, the application of the trustee for an order of the referee to make a call for unpaid stock subscriptions alleged to be due said bankrupt corporation; fourth, the order of the referee making said call; fifth, a certified copy of the charter of said Rich Dry Goods Company, by the introduction of which evidence we think appellee at least made out a prima facie case, making it incumbent upon appellants to introduce evidence in rebuttal.

Thompson on Corporations, § 3802, is authority for the proposition that proof of a subscription and of a valid call makes a prima facie case for the recovery of the amount embraced in the call; for which reason we think the court did not err in refusing said peremptory charge. Nor did the court err, we think, in likewise refusing, after the close of the evidence, a peremptory instruction in behalf of appellants, on the theory that the evidence showed that the appellants in good faith had transferred to Hallenbeck the stock owned by them in said corporation at such time and under such circumstances as to re-

lieve them from all liability on their subscriptions therefor. It will be recalled that the appellants had urged two defenses; the first that they had paid full value for said stock by transferring to said corporation a stock of merchandise, and outstanding notes, accounts, fixtures, and furniture of the face value of said stock; and, second, that they had transferred their respective shares of stock to Hallenbeck in good faith while said corporation was solvent and a going concern. And, while they have introduced evidence in support of each of these contentions, still appellee offered evidence in rebuttal thereof, thereby raising an issue of fact as to each of said pleas that ought, in our judgment, to have been submitted to the jury, and upon which the jury might or might not have found that said stock was in fact paid for in full, and might or might not have found that the same was transferred to Hallenbeck in good faith while said corporation was solvent and a going concern; and, when such is the case, it is always the duty of the court to submit the issues so raised for the consideration of the jury. Said assignments are therefore overruled.

[3] The third assignment insists that the court erred in giving appellee's special charge No. 5, which was to the effect that if the jury found from the evidence that appellants had subscribed for the respective shares shown by the testimony, and that the same were not fully paid for by them and each of them, and they should further find that appellants caused the books of said corporation to show that such capital stock was fully paid, and represented to Hallenbeck that it was fully paid, then to return a verdict in favor of the appellee against each of them for the amounts unpaid on their subscriptions to said capital stock, except as to defendants Leahy and Thompson, and as to them they should find against them jointly for the amount unpaid on their subscription, because: (a) The same did not state a correct principle of law applicable to the facts; (b) said charge is upon the weight of evidence; (c) because the facts stated therein, if found to exist, are not sufficient in themselves to authorize appellee's recovery; (d) because said charge instructed the jury to find for appellee in the event they should find said stock not fully paid up and appellants caused the books of said corporation to show that said capital stock was fully paid up and represented to Hallenbeck that it was fully paid up, thereby disregarding the issue of good faith on the part of appellants in making the transfer to Hallenbeck, and because said representations, if any, made by appellants to Hallenbeck or the entries upon the books, if any, were not conclusive evidence as to appellants' good faith in making said transfer, but were only circumstances which the jury were authorized to consider in passing upon the issue of appellants' good faith in making said transfer of their stock in said corporation to Hallenbeck; and (e) because said charge is confusing and is well calculated to mislead the jury.

The charge complained of should not have been given. It fails to submit the question of the bona fides of appellants in the transfer to Hallenbeck while the corporation was solvent and a going concern, and withdrew this issue from the jury, and was equivalent to a peremptory instruction to find against appellants if they should find any part of their stock subscription unpaid, and was therefore directly contrary, as we understand it, to the law upon this subject. In 1 Cook on Corporations (6th Ed.) § 255, it is said:

"Transfers of shares may be made at any time after the contract of subscription is made and before any part or after a part or the whole of the subscription price has been paid. The well-established and general rule of law is that where a stockholder makes an absolute transfer of his stock in good faith, and the transfer is duly recorded on the corporate books, the transferror is thereby wholly discharged from all further liability upon the uncalled subscription price of the stock"—citing many authorities in support of the text.

Machen, in his Modern Law of Contracts (volume 1, §§ 763, 764), treating this subject states that the owner of the shares at the time the call is made is liable for its payment, and that the criterion for determining such ownership is the company's share register or stock book and further says (section 765):

"It follows that a transfer of shares completed by a proper entry in the company's books releases the transfers of all liability for subsequent calls. This is true although the transferror was the original allottee, his case not being assimilated to that of an original lessee of land whose liability persists in spite of an assignment of the term. Probably, a transfer would release the original allottee from future liability, even though he might have expressly promised at the time of subscribing to the shares to pay their par value. A transfer works a complete novation, so that the transferee may be sued in assumpsit for any calls made after the transfer, although he may have made no express promise to pay the same; and a declaration or complaint charging the defendant as subscriber to shares has been held to be sustained by proof that the defendant acquired shares by transfer."

In England, where the transfer is absolute, the transferror retaining no interest in the shares, he is relieved entirely from future liability by reason of such transfer. The American law, on the other hand, refuses to relieve the transferror from liability where the assignment was made with the knowledge of the company's failing condition and for the purpose of escaping liability and where the transferee is insolvent. See section 765, Id.; also, Webster v. Upton, 91 U. S. 65, 23 L. Ed. 387, which quotes with approval from Angell & A. on Corporations, § 534, wherein it is said:

"When an original subscriber to the stock of an incorporated company, who is so bound to pay the installments on his subscription from time to time as they are called in by the company, transfers his stock to another person, such other person is substituted not only to the rights, but to the obligations, of the original subscriber, and he is bound to pay up the in-

stallments called for after the transfer to him. The liability to pay the installment is shifted from the out-going to the in-coming shareholder. A privity is created between the two by the assignment of the one and the acceptance of the other, and also between them and the corporation; for it would be absurd to say, upon general reasoning, that, if the original subscribers have the power of assigning their shares, they should, after disposing of them, be liable to the burdens which are thrown upon the owners of the stock."

Continuing, the opinion says:

"So in Redfield on Railways, 53, it is said the cases agree that, whenever the name of the vendee of shares is transferred to the register of shareholders, the vendor is exonerated, and the vendee becomes liable for calls. We think therefore the transferee of stock in an incorporated company is liable for calls made after he has been accepted by the company as a stockholder and his name has been registered on the stock books as a corporator; and, being thus liable, there is an implied promise that he will pay calls made while he continues the owner."

See, also, note 4, page 257, to the case of Kettle Falls Land Co. v. Raymond, 47 L. R. A. See, also, note C on transfer of shares to the case of Gettysburg Bank v. Brown, 93 Am. St. Rep. 359, in which it is said:

"Where a subscriber to the capital stock of a corporation transfers his stock to a third person, and has such transfer entered upon the books of the corporation, he ceases, according to the weight of authority, to be liable for future calls. The consent of the corporation to the transfer is, in effect, a novation, a release of the transferror, and an acceptance of the transferee as liable for future calls. Accordingly, for calls made subsequent to the time the transfer became effective on the books of the corporation, the assignor is not, in the absence of statute, responsible; but such calls are collectible from his assignee, who, by his receipt of the stock, and consent to become a stockholder on the corporation books, assumes the liability"—citing many cases in support of the doctrine, among them Cole v. Adams, 19 Tex. Civ. App. 507, 49 S. W. 1052.

The same note, section 2, says that:

"In order that the transaction may operate to release the transferror and substitute in his stead the transferee, it must be bona fide, and not a fraud on the corporation"—citing cases.

In discussing this subject, in Cole v. Adams, supra, Mr. Justice Pleasants said, among other things:

"Amid the conflict of opinion on the subject, we conclude the correct rule to be that a stockholder who transfers his stock in good faith, and with no intention to defraud, while the corporation is solvent, and has the transfer entered upon the books of the corporation, is not liable either to the corporation, or to its creditors, for unpaid subscriptions to the stock. This rule has its exceptions, but we do not understand from the evidence that this case falls under any of the exceptions"—citing authorities.

[4] It is true that the court gave a special charge at the instance of appellants, charging the law in their behalf, as announced in Cole v. Adams, supra, and the other authorities quoted from; but it cannot be held that this error was rendered harmless by reason thereof, because the two charges were conflicting and diametrically opposed to each other, and left the jury without any rule to follow. See Baker v. Ashe, 80 Tex. 361, 16 S. W. 36; Reed v. W. U. Tel. Co., 31 Tex. Civ. App. 116, 71 S. W. 389; T. & P. Ry. Co. v. Browder, 144 S. W. 1043; Railway Co. v. Bailey, 136 S. W. 822; Muldoon v. Bray Land Co., 147 S. W. 701; Ash v. A. B. Frank Co., 142 S. W. 42; Royle Min. Co. v. Fidelity & Casualty Co., 161 Mo. App. 185, 142 S. W. 438; 38 Cyc. p. 1632, and cases cited in note 10.

In the case of Baker v. Ashe, supra, Mr. Justice Gaines, speaking for the court, said:

"A charge which instructs the jury to find for plaintiff in the event they find certain facts proved by the evidence, and omits one of the facts essential to a recovery, is erroneous, and is not cured by a contradictory instruction given at the request of the other party which makes no direct reference to the erroneous charge. The erroneous charge ought to be withdrawn altogether or corrected by a qualification referring directly to it."

And in the case of Reed v. W. U. Tel. Co., supra, Mr. Justice Key, speaking for this court, after citing the case of Baker v. Ashe, and approving the rule therein stated, said:

"But as it (the charge) was framed there was at least apparent inconsistency in the two paragraphs submitting the two issues to the jury, and the jury may have been misled and confused thereby. When a positive error has crept into one paragraph of the court's charge, it is not corrected by another paragraph which states the law correctly, when the latter does not expressly refer to and modify the former."

We therefore sustain said assignment.

[5, 6] At the instance of appellee, the court charged the jury that the burden of proof is on the defendants to show payment for stock subscribed by them in the Rich Dry Goods Company, and, unless the jury found by a preponderance of the evidence that they paid for the stock issued to them, a verdict should be returned for the plaintiff against each of the defendants for the amount each is sued for by the plaintiff, unless the jury should find for the defendants on some other portion of the court's charge, or the special charges given. This is assigned as error on the ground, among other things, that it places upon defendants a burden of proof not imposed upon them by law; and, further, that it is a charge upon the weight of evidence, in that it authorized the jury to find for the plaintiff for the amount sued for, without regard to the evidence. We think the charge with reference to the burden of proof under the state of the pleadings is subject to the criticism urged against it. See Kelley v. Fletcher et al., 94 Tenn. 1, 23 S. W. 1099; Shields v. Clifton-Hill Lumber Co., 94 Tenn. 123, 28 S. W. 668, 26 L. R. A. 509, 45 Am. St. Rep. 700; Thompson on Corp. (2d Ed.) vol. 4, § 5149, note 79. Mr. Thompson in the second edition of his work on Corporations (volume 4, § 5149), says that the general rule as to the burden of proof applies to a creditor who seeks to enforce the debts due from a corporation against the stockholder. So, in such an action to enforce the statutory liability of the stockholder on the ground that his subscription has not been paid, the

burden of proof is on the creditor to show the fact of nonpayment.

Certainly, in no event can it be said that the court could properly tell the jury to find for the plaintiff in the amount sued for, irrespective of what the evidence may have been in regard thereto, as seems to have been done by this charge. Said assignment is therefore sustained.

We sustain the fifth assignment, complaining of paragraph 2 of the main charge of the court, for the reasons set forth in our discussion of the third assignment; and, further, because there was lack of evidence going to show the insolvency of said dry goods company at the time of the transfer of said stock by appellants to Hallenbeck.

[7] We overrule the sixth assignment of error, but sustain the seventh, which complains of special charge No. 3 given at the instance of' appellee, because thereunder the jury were limited to a consideration of the valuation of the property turned over by appellants to the Rich Dry Goods Company in payment for stock issued by it to them alone to the property of the Shotwell Dry Goods Company; whereas, in truth and in fact the evidence shows that other property besides that of the Shotwell Dry Goods Company was turned over to said corporation by appellants in payment for their capital stock, thereby depriving them of the benefits of the value of such other property.

[8, 9] M. L. Hallenbeck, a witness for plaintiff, while on the stand on direct examination having testified that he sold the stock of merchandise which he had bought from the Rich Dry Goods Company to B. A. Cordell within about a month thereafter, and that a short while prior to such sale he had taken an inventory of such stock and the same amounted to $6,500, was asked on cross-examination what he sold same for. Whereupon counsel for appellee objected on the ground that such testimony was immaterial. This witness would have testified, if permitted, that he received more for said stock than he had given for it. We think this testimony was admissible: First, as having a tendency to show the value of said merchandise at the time testified to by the witness in his examination in chief; and was likewise competent for the purpose of contradicting said witness and of discrediting his testimony, and therefore it was error to exclude it. G., C. & S. F. Ry. Co. v. Jackson & Edwards, 99 Tex. 343, 89 S. W. 968; M., K. & T. Ry. Co. v. Rich, 112 S. W. 114; Railway Co. v. Scurlock, 97 Tex. 305, 78 S. W. 491; Curren v. Ampersee, 96 Mich. 553, 56 N. W. 87; Buist v. Guice, 105 Ala. 518, 16 South. 915; Seattle & M. R. Co. v. Roeder, 30 Wash. 244, 70 Pac. 498, 94 Am. St. Rep. 864; Lentz v. Carnegie, 145 Pa. 612, 23 Atl. 219, 27 Am. St. Rep. 717; Wells v. Kelsey, 37 N. Y. 143; Jones on Evid. (2d Ed.) 826; Ency. of Evid. vol. 3, p. 863.

[10] The right of cross-examination is a valuable right to the litigant, and a denial or abridgment thereof upon a material matter is reversible error. We therefore sustain the ninth assignment.

[11] We overrule the tenth assignment, complaining of the action of the court in not sustaining appellant Stitt's plea of personal privilege to be sued in Bell, the county of his residence, because it appears that Thompson, one of his codefendants, who was likewise a stockholder in said company, lived in McLennan county, where the suit was brought. In such case it seems to be the policy of the law to join all the stockholders in one suit, thus preventing a multiplicity of suits, and thereby permitting the issues between all the parties to be disposed of in a single action. See Cook on Stocks and Stockholders (6th Ed.) § 222; Natl. Bank v. Texas Invest. Co., 74 Tex. 433, 12 S. W. 101; Mathonican v. Scott, 87 Tex. 396, 28 S. W. 1063; Clegg v. Varnell, 18 Tex. 294; Wyman v. Bowman, 127 Fed. 257, 62 C. C. A. 189; Brown v. Allebach (C. C.) 156 Fed. 697; Carnahan v. Campbell, 158 Ind. 226, 63 N. E. 384; Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1021; Cook v. Carpenter, 212 Pa. 165, 61 Atl. 799, 1 L. R. A. (N. S.) 900, 108 Am. St. Rep. 854, 4 Ann. Cas. 723. In the case of Natl. Bank v. Texas Investment Co., supra, Mr. Justice Gaines, quoting with approval from Clegg v. Varnell, says:

"From an early day our courts have encouraged the bringing of all parties interested in the subject-matter of a litigation before the court, and determining their rights in one action."

[12-14] By his cross-assignments appellee urges that the court erred in failing to sustain his plea of res adjudicata and in refusing to direct a verdict thereon in his favor, as requested by him, for the amounts found to be due by the referee from appellants upon their unpaid stock, insisting that said order of the referee was conclusive as to the amounts found to be due by appellants, and that hence the court erred in permitting them to introduce testimony going to show the contrary. It will be remembered that the referee in bankruptcy, in making said call, found Rich to be due $4,016.67 upon his stock; that Stitt was due the sum of $5,179.34 upon his stock, and Frank Leahy and Joe S. Thompson jointly were due the sum of $2,892 on their stock. The decree, however, expressly provided that it should not be construed to prevent the trustee, or any party who might be sued by him pursuant to its provisions, from showing payment for such stock, nor from asserting nor from offering evidence to establish any cause of action or defense such trustee or other party may have to assert or make in such suit or suits, action or actions brought by said trustee. This feature of the decree was doubtless made in response to the prayer of appellants therefor.

We think there are three separate and distinct reasons why the action of the court in

overruling said plea of res adjudicata should be sustained: First, because the order of the referee itself, without reference to said proviso, is not conclusive of the amounts due upon said stock, not being a judgment, but only an administrative order made for the purpose of authorizing the trustee to file a plenary suit to enforce said call. Second, because there were two separate defenses urged by appellants; and, while the facts upon which the first was based were passed on by the court, still said order is wholly silent as to the defense urged in the second, viz., a bona fide transfer of their stock to Hallenbeck. Third, if for no other reason, because the order itself specially granted to appellants the right to make any defense to said plenary suit, when the same might be brought, that was justified by the facts. If appellee's contentions were correct in this respect, there would have been no necessity for such plenary suit.

We agree with appellants' contention set forth in their supplemental brief that the granting of such an order by the referee in bankruptcy is not a judgment, but is purely a summary order, administrative in its character, and a necessary predicate for the institution of a plenary suit to recover in a court of competent jurisdiction. See Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968. The court had the right to order the call, and might adopt its own methods in making same. See 10 Cyc. 656, III, where it is said:

"Where an assignment has been made for the benefit of creditors by an insolvent corporation, it is competent for the superintending court to make an order requiring the payment of unpaid subscriptions."

Such assessment, however, by the court does not determine the liability of any particular shareholder, but merely had the effect of making due and payable whatever he may be liable for under the call, so that suit may be brought therefor by the assignee. In re Driving Park Association, 53 Minn. 423, 55 N. W. 598; In re Newfoundland Syndicate (D. C.) 196 Fed. 443, where it is held, as shown by the syllabus, that a proceeding by the trustee of a bankrupt corporation to have an assessment ordered on unpaid stock is not a suit within the meaning of the bankruptcy act, but is an administrative proceeding within the jurisdiction of the court of bankruptcy, since it does not require notice to nor the presence of the stockholders whose personal rights are not involved, but remain to be determined in subsequent suits to collect the assessments, if made. See, also, Great Western Tel. Co. v. Purdy, 162 U. S. 329, 16 Sup. Ct. 810, 40 L. Ed. 986; Auld v. Smith, 23 Kan. 65, wherein it is held that only final judgment affords a basis for the plea of res adjudicata, holding that the reports of referees, etc., are not such.

In Re Minnehaha Driving Park Ass'n, supra, it is said:

"When a court has charge, through its receiver or assignee, of collecting and converting the assets of a corporation, and applying the proceeds to the satisfaction of its debts, the court's call for the unpaid subscriptions to stock stands precisely as does a call made by the directors of an operating corporation. Such a call does not determine absolutely the liability of the stockholders; it has not the effect of a judgment. Its effect is to make whatever the stockholders are liable for, within the call, become due and payable, so that suit may be brought to enforce such liability."

See, also, the following cases: Rood v. Whorton (C. C.) 67 Fed. 434; Id., 74 Fed. 118, 20 C. C. A. 332; In re Yorkville Coal Co., 211 Fed. 619, 128 C. C. A. 570. The Supreme Court of the United States, in the case of Great Western Tel. Co. v. Purdy, supra, said:

"The order of that court was in effect, as it was in terms, simply a 'call or assessment' upon all stockholders who had not paid for their shares in full. It was such as the directors might have made before the appointment of a receiver; and in making it the court, having by that appointment assumed charge of the assets and affairs of the corporation, took the place and exercised the office of the directors. Scovil v. Thayer, 105 U. S. 143–155 [26 L. Ed. 968]; Hawkins v. Glenn, 131 U. S. 319–329 [9 Sup. Ct. 739], 33 L. Ed. 185–191; Lamb v. Lamb, 6 Biss. 420, 424 [Fed. Cas. No. 8,018]; Glenn v. Saxton, 68 Cal. 353 [9 Pac. 420]; Great Western Tel. Co. v. Gray, 122 Ill. 630–636 [14 N. E. 214]; Great Western Tel. Co. v. Lowenthal, 154 Ill. 261 [40 N. E. 318]."

"The order of assessment," the court continues, "whether made by the directors, as provided in the contract of subscription, or by the court as the successor in this respect of the directors, was doubtless, unless directly attacked and set aside by appropriate judicial proceedings, conclusive evidence of the necessity for making such an assessment, and to that extent bound every stockholder without personal notice to him. Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 185; Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867, 34 L. Ed. 264; Glenn v. Marbury, 145 U. S. 499, 12 Sup. Ct. 914, 36 L. Ed. 790. But the order was not and did not purport to be a judgment against any one. It did not undertake to determine the question whether any particular stockholder was or was not liable in any amount. It did not merge the cause of action of the company against any stockholder on his contract of subscription, nor deprive him of the right, when sued for an assessment, to rely on any defense which he might have to an action upon that contract. In this action, therefore, brought by the receiver in the name of the company, as authorized by the order of assessment, to recover the sum supposed to be due from the defendant, he had the right to plead a release or payment, or statute of limitations, or any other defense going to show that he was not liable upon his contract of subscription."

The following language is used by Mr. Justice Rellstab in Re Newfoundland Syndicate, supra:

"To ascertain whether there are insufficient corporate assets, and whether capital stock has been issued at less than par value, are administrative matters, not involving any personal judgment affecting such stockholders in their individual capacity. Their personal presence is therefore not necessary when such ascertainment and assessment is made; nor are they entitled to any other notice than the constructive one had by operation of law by the institution of such bankruptcy proceedings. The enforcement of said assessment against the stockholders alleged to be liable thereto, however, is plenary in its nature, and, except with their

consent, cannot be made in the bankruptcy court. Section 23b, Bankruptcy Act. In the suit to collect such assessment, the defendant is entitled to make all defenses that relate to him in his individual as distinguished from his corporate capacity, such as that he is not a stockholder, or that he has fully paid for the stock taken." Great Western Tel. Co. v. Purdy, supra; Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292; Gorse v. Carter, 156 Fed. 752, 84 C. C. A. 402.

If, however, we are mistaken in the view above expressed, we think there can be no question but that the plea of res adjudicata should not have been sustained, if for no other reason than that it was not conclusive of the second defense pleaded by appellants which was not referred to and embraced in said order of the referee. The decree having expressly left open to appellants the right to assert any defense against such plenary suit as they might have, such right was expressly reserved thereby, and appellants could not be deprived thereof. Therefore the plea was rightfully overruled and the charge properly refused. The rule seems to be that where the pleadings and evidence raise an issue between the parties, and the judgment or decree has expressly left said issue open, then it is not res adjudicata of such question involved therein. See Moore v. Woodson, 53 Tex. Civ. App. 588, 116 S. W. 608; Groesbeck et al. v. Crow, 91 Tex. 74, 40 S. W. 1028; Converse v. Davis, 90 Tex. 462, 39 S. W. 277; Williams v. Wiley, 96 Tex. 148, 71 S. W. 12; Parrish v. Mills, 102 S. W. 186.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

## On Motion for Rehearing.

[15] Special charge No. 5, given at the instance of appellee, in effect told the jury that if they should find from the evidence that appellants subscribed for certain respective shares of the capital stock of the Rich Dry Goods Company, and that such capital stock was not fully paid for by them, and they should further find that appellants caused the books of said company to show that such capital stock was fully paid, and represented to Hallenbeck that it was fully paid, then they were charged that they should find a verdict in favor of appellee against appellants for the amount unpaid on their subscription to said capital stock. Appellants assailed this charge, and we sustained the assignment, holding that the giving of this charge was error. An elaborate motion for rehearing has been filed by appellee complaining of our holding in this respect; but, after a careful consideration of same, we are still of the opinion (though for a different reason than that assigned in the original opinion) that said charge was error, and should not have been given. Supplementing what was said in our original opinion, we

wish to add that this charge did not negative the idea that Hallenbeck, notwithstanding such representations, may have known that said stock was not paid up. If he knew that it was not fully paid up, then the general rule of law is that he became liable for such unpaid balance, and this fact would ordinarily relieve the appellants from liability thereon. The general doctrine stated in our original opinion, and sustained by many of the cases, to the effect that a bona fide sale of stock to another will relieve the transferror, is based on the assumption that the transferee knew at the time of the purchase that the stock was not fully paid for, and therefore is presumed to have assumed the payment of such unpaid balance, and is based on the idea of novation; but no reference, however, was made to this phase of the case in our original opinion. There can be no novation in the absence of such knowledge and assent thereto. See Am. & E. Ency. Law (2d Ed.) vol. 21, p. 666. But where the purchaser has no knowledge that the stock is unpaid, and buys upon the belief that the stock is fully paid up, he cannot be held for the unpaid balance thereon. In discussing this question, the court, in the case of Eastern Nat. Bank v. American Brick & Tile Co., 69 N. J. Eq. at page 334, 60 Atl. 57, says:

"The liability of transferees for assessments on account of unpaid stock has been the subject of much consideration by the courts of this country, resulting in radical differences of opinion; but in my judgment the weight of authority and sound reason support the view that a bona fide transferee of stock, the certificate for which recites that it is fully paid, is not liable to make good the contract of the original subscriber if the transferee has no knowledge that the subscriber has not paid in full, nor notice of any fact from which knowledge may be inferred, or which requires him to inquire as to the truth of such statement. The right to hold a stockholder for an unpaid subscription, in the interest of creditors, rests upon the doctrine that the capital stock is a trust fund for the payment of the obligations of the company, and that the subscription creates a debt due to the corporation upon which a creditor may rely and which the company cannot remit to his injury. The contract between the corporation and the subscriber is that for the stock issued he will make full payment, and any attempt to avoid this, by waiver or other device, will not excuse the subscriber to the injury of the creditor, but there is no equitable reason why the creditor should be allowed to shift the right he holds against the contractor to a bona fide transferee without knowledge of the infirmity, and to imply that he has assumed a contract of which he has no knowledge and which he would not have made had he been informed regarding it."

See, also, French v. Harding, 235 Pa. 79, 83 Atl. 586, Ann. Cas. 1914B, 744, where it is held, as shown by the syllabus, that a bona fide purchaser for value and without notice of the stock issued by a corporation as paid up cannot be held liable on such stock in any way, either to the corporation, corporate creditors, or any other person, even though the stock was not actually paid up as represented.

In Cook on Corporations, vol. 1, § 257, it is said:

"The question whether the purchaser of stock is bound to take notice that the stock he purchases is not fully paid for is a serious and complicated one. The better opinion, and the one most in accord with the usages and demands of trade, is that, where one buys stock in open market in good faith and without notice that the subscription price thereof has not been paid up, such a purchaser cannot be held liable to pay the unpaid balance of subscription."

See, also, Davies v. Ball, 64 Wash. 292, 116 Pac. 833, and note to that case on page 754 of Ann. Cas. 1914B, where the same doctrine is announced. See, also, West Nashville Planing Mill Co. v. Nat. Savings Bank, 86 Tenn. 252, 6 S. W. 340, 6 Am. St. Rep. 835.

[16] In addition to his other contentions, counsel for appellee insists that this court erred in not holding that the original stockholders were liable on the ground that they had the stock issued as fully paid up when it was not in fact so paid, basing this insistence upon article 12, § 6, of our state Constitution, which provides that no corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void. We have reached the conclusion that this contention on the part of appellee is well taken. This provision of the Constitution puts the original stockholders in the attitude of guarantors, making them responsible to creditors for the unpaid balance due thereon; and this is true, we think, regardless of whether or not they may have transferred said stock to another who had notice that the same was not fully paid up; and, in view of another trial, we think the jury should be so charged. In this connection, see Harris' Const. art. 12, § 6, and authorities there cited; Van Cleve v. Berkey, 143 Mo. 109, 44 S. W. 743, 42 L. R. A. 593; Camden v. Stuart, 144 U. S. 105, 12 Sup. Ct. 585, 36 L. Ed. 363; O'Bear, Nestor Glass Co. v. Anti-Explo Co., 101 Tex. 431, 108 S. W. 967, 109 S. W. 931, 16 L. R. A. (N. S.) 520, 130 Am. St. Rep. 865.

After fully considering same, our opinion is that the motion for rehearing should be overruled, and it is accordingly so ordered.

Motion overruled.